[No. S129755. June 5, 2006.]

THE PEOPLE, Plaintiff and Appellant, v.
JARED JACOB STANDISH, Defendant and Respondent.

862

**COUNSEL**

Steve Cooley, District Attorney, Lael Rubin, Head Deputy District Attorney, Brent D. Riggs, Patrick D. Moran and Shirley S. N. Sun, Deputy District Attorneys, for Plaintiff and Appellant.

Michael P. Judge, Public Defender, Robert M. Wilder and John Hamilton Scott, Deputy Public Defenders, for Defendant and Respondent.

**OPINION**

**GEORGE, C. J.**—Two principal issues are presented in this case. The first is whether defendant was entitled to be released from custody on his own recognizance (OR), subject to reasonable conditions, when his preliminary examination was continued for good cause beyond the 10-day period specified in Penal Code section 859b.[1]

The second question needs to be reached only if we answer the first question in the affirmative. That question is whether the failure to grant defendant OR release pending his preliminary examination constituted a violation of a substantial right entitling him to have the information set aside pursuant to section 995.

For the reasons explained below, we conclude defendant was entitled to OR release when the preliminary examination was continued for good cause, but that the court's failure to grant him OR release pending the preliminary examination did not amount to denial of a substantial right at the preliminary examination within the meaning of section 995, in the absence of evidence that the error reasonably might have affected the outcome of that hearing.

**I**

Testimony introduced at the preliminary examination indicated that, on an occasion during the first week of April 2002, defendant held his two-year-old daughter over a second-floor balcony railing, while neighbors urged him to bring the child to safety. On April 5, 2002, defendant killed his wife's cat. His daughter witnessed some of the events constituting the assault on the cat. A neighbor, Annette Madison, who had witnessed the child-dangling incident, found the headless body of the cat on her balcony. Madison telephoned the police, and defendant was arrested. The Court of Appeal surmised from an incomplete record that a complaint was filed charging defendant with criminal offenses arising from the two incidents.

After a short time in custody, defendant was released on bail. Upon his return home, he saw Madison as she approached her apartment, and stated, "Whoa, aren't you scared?" Defendant then attacked his wife, hitting her in the face with his fist. Madison again telephoned for police assistance. Defendant accused Madison of having placed him under a spell, adding that she had broken up his family and that he planned to cut her throat. He accompanied the threat with a gesture, drawing his finger across his throat.

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

Defendant was arrested, and apparently in mid-April a complaint was filed charging new criminal offenses, and the two cases were consolidated.

Defendant was placed in custody at the time of his second arrest in April 2002. He remained in custody, but proceedings on the mid-April complaint were suspended for an evaluation of his mental competency pursuant to section 1368. In late November or early December 2002, he was found competent to stand trial, whereupon criminal proceedings resumed. The complaint was dismissed because the prosecution was unable to proceed without Madison, who was unavailable as a witness. The prosecutor refiled the complaint on December 11, 2002, charging defendant with two felony offenses: cruelty to an animal (§ 597, subd. (a)), and making a criminal threat (§ 422). The complaint also charged a misdemeanor, willful cruelty to a child. (§ 273a, subd. (b).) It is the refiled complaint that is the subject of the present appeal.

On December 24, 2002, the prosecutor moved for a continuance of the preliminary examination. The motion was made on the ninth of the 10 court days within which a preliminary examination must be held if a defendant is in custody. (§ 859b.) The prosecutor reported that, despite having been subpoenaed, Madison was out of the state on vacation and would not be available as a witness until "after the holidays."

Defense counsel objected to the continuance, asking in the alternative that defendant "be released OR if the court grants a continuance." Defense counsel referred to various circumstances in support of his request for OR release, including defendant's having been in custody without a probable cause determination since the previous April—approximately eight months—and defendant's currently taking medication "that addresse[d] the issues he had before." The magistrate declined to grant OR release, however, stating "[r]ight now I'm not inclined to release him on his own recognizance. I might have considered that, I suppose, if this is really a medical issue and I had some sort of competent medical testimony. But the file is replete with incidents that obviously cause great concern." The magistrate granted a continuance until January 7, 2003, but also set the case for hearing on January 3 in the event Madison should be available then, and also for review of the amount of bail.

On December 31, 2002, another hearing occurred before a different judge. At this hearing, defense counsel moved for dismissal or at least for defendant's release on OR pursuant to section 859b. The magistrate denied the request for OR release, refusing to overturn the order of another judge. (See *In re Alberto* (2002) 102 Cal.App.4th 421, 426–428 [125 Cal.Rptr.2d 526].) The magistrate stated he would rule on the motion to dismiss on the date set for the preliminary examination.

On January 7, 2003, the date of the preliminary examination before the original magistrate, defense counsel moved for dismissal pursuant to section 859b, arguing that the prosecution had failed to show good cause for the continuance, because the preliminary examination could have proceeded with the testimony of the arresting officer. Defendant also moved for OR release under the authority of section 859b, stating "his preliminary hearing could have and should have occurred under Proposition 115 within the time period and there should not have been a good cause finding to go outside the period." The prosecutor responded that the officer who could have testified was not available for the December 24, 2002 hearing.

The magistrate denied the motion for dismissal, stating there had been good cause for the continuance and adding: "I would be at a loss to understand[] how I can grant the motion anyway because I'm the one that found good cause on December 24 to continue today's date." At the conclusion of the preliminary examination, the prosecution added a fourth count, felony child abuse (§ 273a, subd. (a)), and a fifth count, spousal battery, a misdemeanor. (§ 243, subd. (e)(1).) The magistrate held defendant to answer. Defense counsel renewed his motion for dismissal or OR release pursuant to section 859b. The prosecutor responded: "I believe 859b was something that needed to be addressed prior to preliminary when the court found good cause. That was an argument that was made at that time. It was subsequently made . . . . However that particular code section was not cited to this court on December 24. It went back to Judge Ogden on January 3rd. [¶] Judge Ogden refused to re-hear something this court made a finding on . . . ." The magistrate, evidently agreeing, set bail at $175,000.

An information was filed on January 21, 2003, charging defendant with cruelty to an animal (§ 597, subd. (a)), cruelty to a child (§ 273a, subd. (b)), making criminal threats (§ 422), child abuse (§ 273a, subd. (a)), and battery upon a spouse or cohabitant. (§ 243, subd. (e)(1).) The information also alleged as enhancements that defendant personally used a deadly weapon when committing the offense of cruelty to an animal (§ 12022, subd. (b)(1)), and that the criminal threats and spousal battery occurred while defendant was released from custody on bail. (§ 12022.1.)

On February 27, 2003, defendant moved to set aside the information pursuant to section 995. He contended it was "questionable" whether good cause justified the December 24, 2002 continuance of the preliminary examination, and that he had not been legally committed, because he was held in illegal custody in violation of section 859b. He urged that section 859b required that he be released on the date the continuance was granted. The prosecution countered that defendant had waived his claim by failing to refer to section 859b on December 24, that defense counsel had agreed to the

continuance, and that defendant acted improperly in setting the matter for hearing before another judge on December 31 and "did not take all necessary steps to preserve . . . the alleged error made on December 24, 2002." The prosecution's points and authorities apparently conceded that the magistrate would have been required to grant a *timely* motion for OR release: "The People concede that had the 859b OR release issue been raised prior to the preliminary hearing and after the continuance was granted consistent with Penal Code Section 1318, the defendant would have been eligible for release and would have been released at that time pending preliminary exam."

On March 13, 2003, the superior court granted defendant's motion to set aside the three counts in the information that were based on the December 11, 2002, complaint, concluding that "there was a denial of the defendant's rights under 859b; that the defendant should have been released on his own recognizance, and that based upon that denial, the 995 motion should be granted."

At a further hearing held on March 18, 2003, the court set aside the remaining two counts that had been added at the conclusion of the preliminary examination.

The People appealed from the judgment of dismissal, and the Court of Appeal affirmed the judgment rendered by the trial court. We granted the People's petition for review.

## II

### A

█ The present case requires this court to interpret section 859b, which governs the time within which a preliminary examination must be held. The statute provides that with reference to in-custody defendants, the complaint must be dismissed if the preliminary examination is not held within 10 days of arraignment, except that the hearing may be continued with the consent of the defendant or if the prosecution establishes good cause for a continuance. If the defendant is in custody,[2] however, the statute requires that upon continuance of the hearing, the defendant "shall" be released on his or her own recognizance, with specified exceptions where (1) continuance of the preliminary examination beyond the 10-day period is requested by the defendant; (2) the case involves capital charges where the "proof is evident

---

[2] It is understood that the OR-release provision applies when the defendant is in custody for reasons *solely attributable* to the charges to be adjudicated at the preliminary examination. (See *Blake v. Superior Court* (1980) 108 Cal.App.3d 244, 248 [166 Cal.Rptr. 470].)

and the presumption great"; (3) a necessary witness is unavailable due to the actions of the defendant; (4) counsel is ill; (5) counsel is required unexpectedly to appear in a jury trial; or (6) unforeseen conflicts of interest require appointment of new counsel.[3]

The history of the enactment assists us in analyzing the questions before us. At one time, section 859b simply called for a preliminary examination to be set after the initial arraignment on the charges. Case law required only that the accused, whether in custody or at liberty, be afforded a preliminary examination without "unreasonable delay." (*People v. Du Bose* (1970) 10 Cal.App.3d 544, 550 [89 Cal.Rptr. 134].)

Evidently not satisfied with this vague standard, the Legislature amended the statute in 1970, adding a provision granting accused persons *in custody* the right to a preliminary examination within 10 days of arraignment or plea. (Stats. 1970, ch. 1371, § 1, p. 2537.) Reasoning that the statute employed *mandatory* terms, and that the statute expressed a plain policy to protect the liberty of persons who are unable to post bail, an appellate court held that the statute created an *absolute* right to a preliminary examination within the specified period for in-custody defendants who do not waive the right, and

---

[3] Section 859b provides in pertinent part: "Both the defendant and the people have the right to a preliminary examination at the earliest possible time, and unless both waive that right or good cause for a continuance is found . . . , the preliminary examination shall be held within 10 court days of the date the defendant is arraigned or pleads, whichever occurs later, or within 10 court days of the date criminal proceedings are reinstated pursuant to Chapter 6 (commencing with section 1367) of Title 10 of Part 2.

"Whenever the defendant is in custody, the magistrate shall dismiss the complaint if the preliminary examination is set or continued beyond 10 court days from the time of the arraignment, plea, or reinstatement of criminal proceedings . . . , and the defendant has remained in custody for 10 or more court days solely on that complaint, unless either of the following occur: [¶] (a) The defendant personally waives his or her right to preliminary examination within the 10 court days. [¶] (b) The prosecution establishes good cause for a continuance beyond the 10-court-day period.

"For purposes of this subdivision, 'good cause' includes, but is not limited to [specified circumstances]. Any continuance under this paragraph shall be limited to a maximum of three additional court days.

"If the preliminary examination is set or continued beyond the 10-court-day period, the defendant shall be released pursuant to Section 1318 unless: [¶] (1) The defendant requests the setting of continuance of the preliminary examination beyond the 10-court-day period. [¶] (2) The defendant is charged with a capital offense in a cause where the proof is evident and the presumption great. [¶] (3) A witness necessary for the preliminary examination is unavailable due to the actions of the defendant. [¶] (4) The illness of counsel. [¶] (5) The unexpected engagement of counsel in a jury trial. [¶] (6) Unforeseen conflicts of interest which require appointment of new counsel.

"The magistrate shall dismiss the complaint if the preliminary examination is set or continued more than 60 days from the date of the arraignment, plea, or reinstatement of criminal proceedings . . . , unless the defendant personally waives his or her right to a preliminary examination within the 60 days."

that "in the absence of a waiver this right cannot be impinged upon by the magistrate, even on a showing of good cause." (*Serrato v. Superior Court* (1978) 76 Cal.App.3d 459, 464 [142 Cal.Rptr. 882] [interpreting the 1970 version of the statute].) Although the statute did not contain any enforcement mechanism, the court held that failure to conduct the preliminary examination within the mandated period constituted a deprivation of a substantial right requiring dismissal. (*Id.* at pp. 468–470.)

Effective in 1978, section 859b was amended to provide that both the prosecution and the defendant have a right to a speedy preliminary examination, adding language stating that a preliminary examination could be continued for good cause beyond the 10-day period—but only if the accused was *not* in custody. (Stats. 1977, ch. 1152, § 1, p. 3698.) The Legislature made clear its intent to establish an absolute rule devoid of exceptions, adding the following language to the statute: "*In no instance* shall the preliminary examination be continued beyond 10 court days from such arraignment or plea whenever the defendant is in custody at the time of such arraignment or plea and the defendant does not personally waive his right to preliminary examination within such 10 court days." (*Id.*, pp. 3698–3699, italics added.)

In 1980, the Legislature again amended the statute, authorizing a preliminary examination to be continued beyond the 10-day period for *all* defendants, *including* persons in custody, upon a showing of good cause, but *expressly requiring dismissal* if the preliminary examination was continued beyond the 10-day period without a waiver and without good cause when the defendant is in custody. (Stats. 1980, ch. 938, § 1, p. 2965.)

Also in 1980, section 859b was amended to add a version of the language that is of principal concern in the present case. That amendment provided that if a preliminary examination for an in-custody defendant is delayed beyond the 10-day period for good cause, the defendant "shall" be released on his or her own recognizance (subject to conditions as prescribed by section 1318), except for defendants charged with capital crimes "where the proof is evident and the presumption great." (Stats. 1980, ch. 938, § 1, p. 2965.) Thus, although under the former law the prosecution would have suffered a *dismissal* (with the resulting release of the defendant without conditions) if a continuance were needed, whether the delay was justified by good cause or not, the new provision accommodated the prosecution's needs in part, by substituting OR release for dismissal when the prosecution establishes good cause for the delay.[4]

---

[4] In 1981, the Legislature added further exceptions to the rule requiring OR release, as noted in footnote 3, *ante*. (Stats. 1981, ch. 854, § 1, pp. 3276–3277.) Subsequent amendments did not affect the OR-release provision of section 859b. (Stats. 1987, ch. 461, § 1, pp. 1699–1700; Stats. 1989, ch. 897, § 26.5, pp. 3066–3067; Stats. 1996, ch. 122, § 1, pp. 462–463.)

## B

The People contend that the language of section 859b leaves the magistrate with discretion to deny OR release on public safety grounds to a defendant who is in custody but whose preliminary examination is continued beyond the 10-day period for good cause. According to the People, the magistrate retains such discretion whether or not the defendant's case comes within the exceptions enumerated by the statute. As we explain, neither the language nor the purpose of the statute supports such an interpretation.

■ We interpret statutes with the object of ascertaining and effectuating the Legislature's intent. (*People v. Smith* (2004) 32 Cal.4th 792, 797 [11 Cal.Rptr.3d 290, 86 P.3d 348].) "In determining such intent, we begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning." (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [96 Cal.Rptr.2d 463, 999 P.2d 686].)

■ In the present case, the meaning of the statute appears unambiguous. If an in-custody defendant's preliminary examination is delayed for more than 10 court days without a waiver or good cause, the complaint must be dismissed, but if the prosecutor shows good cause for postponement, no dismissal is required—but a defendant who is in custody must be released on OR, as long as he or she agrees to be bound by reasonable conditions and to appear at future hearings as provided in section 1318. Indeed, case law and secondary authorities treat as commonplace the rule that OR release is required after the prosecutor secures a continuance for good cause pursuant to section 859b. (See *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 5–6, fn. 4 [177 Cal.Rptr. 325, 634 P.2d 352]; 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 130, p. 332; 1 Levenson, Cal. Criminal Procedure (1999) ch. 10, § 10.02(B), p. 10-8.) It is evident that the Legislature examined its previous policy requiring dismissal in all cases of delay when the accused is in custody, and in part accommodated the prosecution's needs by providing the lesser remedy of OR release whenever there is good cause for a continuance—presumably in light of the prosecution's ability to refile a complaint dismissed by the court or itself dismiss and refile the complaint if OR release is ordered.

■ Ordinarily, the term "shall" is interpreted as mandatory and not permissive. Indeed, "the presumption [is] that the word 'shall' in a statute is ordinarily deemed mandatory and 'may' permissive." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 [43 Cal.Rptr.2d 693, 899 P.2d 79].) There is no reason to believe that the OR-release provision contained in section 859b is merely permissive despite

the Legislature's use of the term "shall." In every other portion of section 859b, the Legislature has used the term in its mandatory sense, a circumstance undisputed by the People.[5] Terms ordinarily possess a consistent meaning throughout a statute. (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 960 [32 Cal.Rptr.3d 5, 116 P.3d 479].) The People have not suggested any reason to suppose the Legislature intended that the term "shall" in the portion of the statute presently under review means anything different from what that term signifies throughout the remaining portions of the statute.

The evident purpose of section 859b supports the view that its provisions are mandatory, rather than permissive. This enactment is one of a number of statutes "that are supplementary to and a construction of the constitutional right to a speedy trial." (*People v. Luu* (1989) 209 Cal.App.3d 1399, 1404 [258 Cal.Rptr. 10].) Section 859b "reflects a clear legislative intention to prevent prolonged incarceration prior to a preliminary hearing." (*Landrum v. Superior Court, supra,* 30 Cal.3d at p. 12.) This statute " 'manifests a legislative policy to *eliminate* the possibility that persons charged with felonies might suffer prolonged incarceration without a judicial determination of probable cause merely because they are unable to post bond in order to gain their freedom.' " (*Blake v. Superior Court, supra,* 108 Cal.App.3d 244, 248, italics added.) In many cases, that legislative policy would not be served under the People's interpretation of the statute.

■ The People contend that the language of section 859b leaves the magistrate with authority to deny OR release to in-custody defendants for reasons other than the exceptions to the OR-release provision specified in the statute itself. But the presence of express exceptions ordinarily implies that additional exceptions are not contemplated. "[W]here exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed" unless a contrary legislative intent is evident. (*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537].) In the present case, we are unable to perceive any indication of legislative intent to deviate from that rule of statutory construction.

The People stress that public safety is an interest that should be considered in *any* decision to release an accused person on OR and that such a concern must be the basis for the exercise of judicial discretion in any OR decision.

---

[5] A related statute employs the same apparently mandatory language. Section 861 requires a preliminary examination to be held in a single session, unless there is good cause for proceeding otherwise. Postponement for good cause cannot be for more than 10 days, unless the defendant waives his or her rights under the statute or the prosecution establishes good cause for a further postponement. "If the magistrate postpones the preliminary examination beyond the 10-court-day period, and the defendant is in custody, the defendant shall be released pursuant to subdivision (b) of Section 859b." (§ 861, subd. (a)(2).)

But the enactment of statutory exceptions to the OR-release provisions of section 859b demonstrates that the Legislature already has considered the public safety interests that might outweigh the interest of an incarcerated defendant in being set at liberty when the preliminary examination is delayed. It has concluded that when good cause for a continuance is lacking, dismissal is required without regard to public safety concerns. As for the lesser remedy of OR release when the prosecution has demonstrated good cause for continuance, the Legislature has identified those instances in which the incarcerated defendant's interest must give way, for example when there is a capital charge or the defendant has acted to render a witness unavailable. The Legislature has struck a balance between the incarcerated accused person's interest in liberty and the public's interest in security. The People evidently wish that a different balance had been struck to cover additional situations, but that did not occur. The Legislature, of course, is free to revise the statute as it wishes within constitutional limits, but the current language of the statute does not support the People's position.

The People claim that section 859b's reference to section 1318 affords magistrates full discretion to deny OR release. The latter statute requires persons who are released on OR to sign a release agreement promising to appear at future proceedings and to obey all reasonable conditions—including conditions that serve public safety. (See *In re York* (1995) 9 Cal.4th 1133, 1145 [40 Cal.Rptr.2d 308, 892 P.2d 804].)[6] The People suggest that, because the OR-release provision of section 859b refers to section 1318, which calls for the magistrate's exercise of discretion in setting reasonable conditions of OR release, the magistrate also must retain discretion to *deny* OR release altogether to persons whom the magistrate views as a public safety risk.

Contrary to the People's argument, however, section 1318 does not govern a magistrate's exercise of discretion *whether to grant* OR release. The magistrate's discretion whether or not to grant OR release is governed by other provisions—provisions to which the Legislature could have referred in section 859b had it intended that OR release pursuant to section 859b be discretionary. (Cf. §§ 1269c [governing applications for increase or decrease in bail and for OR release], 1270 [setting out the general circumstances in which defendants may be granted OR release], 1270.1 [requiring a hearing before scheduled bail may be increased or decreased or OR release

---

[6] Section 1318 provides: "(a) The defendant shall not be released from custody under an own recognizance until the defendant files with the clerk of the court . . . a signed release agreement which includes: [¶] (1) The defendant's promise to appear at all times and places, as ordered by the court or magistrate . . . . [¶] (2) The defendant's promise to obey all reasonable conditions imposed by the court or magistrate. [¶] (3) The defendant's promise not to depart this state without leave of the court. [¶] (4) Agreement by the defendant to waive extradition . . . . [¶] (5) The acknowledgment of the defendant that he or she has been informed of the consequences and penalties applicable to violation of the conditions of release."

granted to defendants charged with specific violent felonies, and specifying factors to be considered by the court]; see also §§ 273.75 and 273.84 [governing OR release in specified domestic violence and spousal abuse cases], 1319 [requiring a hearing prior to OR release in violent felony cases, prescribing circumstances to be considered by the court in such cases, and *prohibiting OR release* for any person charged with a violent felony who previously failed to appear], 1319.5 [requiring a hearing prior to OR release for parolees, probationers, and persons who previously failed to appear].)

■ Rather, section 1318 prescribes the *terms* of the defendant's OR release agreement, including his or her required promise to obey all reasonable conditions imposed by the court. Section 1318 does not govern the court's authority to grant or deny OR release.

In addition, as the Court of Appeal explained, the People's argument, if accepted, would render portions of section 859b a nullity. There would have been no need, for example, for the Legislature to add a specific public safety exception for capital defendants—let alone a qualification that the latter exception be limited to capital offenses in which the proof is evident and the presumption great—if the reference to section 1318 conferred upon the magistrate full authority to deny OR release despite the magistrate's having granted the prosecution a continuance of a preliminary examination beyond the 10-day period.

The People cite *In re Samano* (1995) 31 Cal.App.4th 984 [37 Cal.Rptr.2d 491] in support of their claim that section 859b does not require OR release in every instance in which an in-custody defendant's preliminary examination is continued for good cause beyond the 10-day period at the prosecutor's request. In that case, however, the request for a continuance came from the *defense* and not from the prosecution. Two codefendants moved for continuance of the preliminary examination and waived the statutory period, while the other codefendants objected and did not waive time. The reviewing court held that failure to hold the preliminary examination within the statutory period did not compel OR release for the objecting codefendants.

The court *acknowledged* the general rule that section 859b mandates OR release when the prosecutor secures a continuance for good cause (*In re Samano, supra*, 31 Cal.App.4th at p. 990), but pointed out that *the prosecutor had not requested the continuance.* The court emphasized that "[s]ection 859b, subdivision (b) is premised on the *People* as the initiator of the continuance." *(Id.* at p. 989, italics added.) The court reasoned that a codefendant's request for a continuance "should not inure to the detriment of the People with the nonmoving codefendants as unintended third party beneficiaries. The People were ready for the preliminary hearing and wanted to go forward . . . ."

(*Ibid.*) The court also noted that another statute specifies that if the preliminary examination of one defendant is continued for good cause, proceedings for all codefendants may be continued so as to maintain joinder, a strong state interest. (See § 1050.1.) Balancing the interests of the codefendants in not being held in custody for a prolonged period without any determination of probable cause against the state's interest in joint trials, the court concluded that when it is not the prosecutor but a *codefendant* who requests the continuance, the request should be attributed to all codefendants.

The decision in *In re Samano* is distinguishable from the present case, in which it was the *prosecution* that requested the continuance. That decision does not support the People's claim that courts retain general discretion to deny OR release when a defendant is in custody and the prosecutor secures a continuance of the preliminary examination for good cause, nor does the decision support the People's claim that courts have engrafted exceptions onto section 859b for instances in which the *prosecutor* secures a continuance. Two additional cases are distinguishable on a similar basis, in that the delay in the preliminary examination was attributable to the *defense* and, indeed, served the defendant's constitutional interests. (*People v. Kowalski* (1987) 196 Cal.App.3d 174 [242 Cal.Rptr. 32] [defense counsel's request for additional time was treated as a defense time waiver although the defendant personally objected, because the request served the defendant's constitutional right to be represented by competent counsel]; *Curry v. Superior Court* (1977) 75 Cal.App.3d 221, 226 [141 Cal.Rptr. 884] [§ 859b is subordinated to the defendant's constitutional right of self-representation and the preliminary examination properly was delayed—over the defendant's objection—because additional time was needed to assess his mental capacity to represent himself].) By contrast, in the present case it was the *prosecutor* who sought the continuance, and obviously no constitutional right of defendant was served by denying him OR release.

■ The prosecutor's request for a continuance illustrates the very reason section 859b was enacted; that is, to ensure that the *prosecution* cannot cause delay that results in the prolonged incarceration of a charged individual without a determination of probable cause. The People have not offered any theory under which the request for a continuance could be attributed to defendant in the present case. Nor do the People explain as a general matter how the statute would continue to operate under their interpretation. If section 859b provides that the court should grant OR release only to persons who otherwise would be eligible for OR release under other statutes, section 859b's OR-release provision never would apply, because the accused person already would be out of custody on OR. Reading the People's proposed public safety exception into the statute would operate to render its OR provision a dead letter, or at least render superfluous the specific exceptions set out in the statute.

## C

The People next contend that provisions of the California Constitution require that a magistrate retain discretion to deny OR release notwithstanding section 859b. The People rely principally upon article I, section 28, subdivision (e) as proposed by Proposition 8 on the June 1982 primary election ballot, entitled the Victims' Bill of Rights. Under that provision, according to the People, defendant was not entitled to OR release, because he was charged with a serious felony and posed a threat to public safety.

Proposition 8 proposed to repeal article I, section 12 of the California Constitution, which governs bail and OR release and which provided, prior to the June 1982 election: "A person *shall* be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. [¶] A person may be released on his or her own recognizance in the court's discretion." (Italics added.) The language concerning OR was added to the Constitution as part of a constitutional revision adopted by the voters at the November 5, 1974, General Election. Prior to that time, the bail provisions of the Constitution were contained in article I, section 6, but no mention was made of OR release. There was, however, a " 'well-established practice of releasing persons accused of crimes on their own recognizance' " in appropriate circumstances as an alternative to requiring the posting of bail—an alternative continued and recognized by the OR provisions that were added in 1974. (*Dant v. Superior Court* (1998) 61 Cal.App.4th 380, 385 [71 Cal.Rptr.2d 546], quoting Cal. Const. Revision Com., Proposed Revision (1971) p. 19.)

As noted, Proposition 8 proposed to repeal article I, section 12 and substitute article I, section 28, subdivision (e). The proposed subdivision was entitled "Public Safety Bail" and provided in pertinent part: "A person *may* be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. In setting, reducing or denying bail, the judge or magistrate shall take into consideration *the protection of the public*, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. *Public safety shall be the primary consideration.* [¶] A person may be released on his or her own recognizance in the court's discretion, subject to the *same factors* considered in setting bail. However, *no person charged with the commission of any serious felony shall be released on his or her own recognizance*." (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, p. 33, italics added.)

In relying on the bail and OR provisions of Proposition 8, the People fail adequately to take account of a series of opinions, including one by this

court, that has concluded that the relevant provision of Proposition 8 never became effective, because a competing initiative measure on the same ballot (Proposition 4) garnered more votes than Proposition 8. (*In re York, supra,* 9 Cal.4th at p. 1140, fn. 4; see also *Dant v. Superior Court, supra,* 61 Cal.App.4th at pp. 384–385, fn. 6; *People v. Cortez* (1992) 6 Cal.App.4th 1202, 1211 [8 Cal.Rptr.2d 580]; *People v. Barrow* (1991) 233 Cal.App.3d 721, 723 [284 Cal.Rptr. 679].)

Proposition 4 added language to article I, section 12 that is relevant to the subject of release on *bail*.[7] New language permitted courts setting bail to consider factors other than the probability that the defendant would appear at trial. In particular, the measure authorized courts to consider the seriousness of the offense and the previous criminal record of the accused, and the proponents of the measure made it clear they intended that public safety should be a consideration in bail decisions. (Ballot Pamp., Primary Elec. (June 8, 1982) argument in favor of Prop. 4, p. 18.) Proposition 4, however, did not amend the preexisting provision of article I, section 12 of the state Constitution related to *OR release*. Specifically, Proposition 4 did not amend the language providing that "[a] person may be released on his or her own recognizance in the court's discretion." (Cal. Const., art. I, § 12; see *Dant v. Superior Court, supra,* 61 Cal.App.4th at pp. 384–385, fn. 6; Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 4, p. 17.)

In *In re York, supra,* 9 Cal.4th 1133, the defendant claimed that the magistrate violated section 1318 by placing conditions upon his OR release that were not concerned with guaranteeing his presence at the hearing. We began our discussion as follows: "Article I, section 12, of the California Constitution establishes a person's right to obtain release on bail from pretrial custody, identifies certain categories of crime in which such bail is unavailable, prohibits the imposition of excessive bail as to other crimes, sets forth the factors a court shall take into consideration in fixing the amount of the required bail, and recognizes that a person 'may be released on his or her

---

[7] Proposition 4 submitted the following text of article I, section 12 to the voters for approval: "A person shall be released on bail by sufficient sureties, except for: [¶] (a) Capital crimes when the facts are evident or the presumption great[]; [¶] (b) *Felony offenses involving acts of violence on another person when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or* [¶] (c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released. [¶] Excessive bail may not be required. *In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.* [¶] A person may be released on his or her own recognizance in the court's discretion." (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 4, p. 17.)

own recognizance in the court's discretion.' Penal Code section 1318 sets forth a variety of requirements that an OR release agreement must satisfy." (*In re York*, at pp. 1139–1140, fn. omitted.) Having identified the constitutional source of the right to bail and to consideration for OR release, we explained in a footnote that the source of the bail provisions of article I, section 12 was Proposition 4. "The provisions set forth in article I, section 12, of the California Constitution were contained in Proposition 4, enacted by the voters at the June 1982 Primary Election. Proposition 4 received more votes than did Proposition 8, an omnibus initiative that, in the same election, added (among other provisions) article I, section 28, subdivision (e), to the California Constitution, providing in pertinent part: 'A person may be released on his or her own recognizance in the court's discretion, subject to the same factors considered in setting bail.' . . . [¶] *Because Proposition 4 received more votes than did Proposition 8, the bail and OR release provisions contained in Proposition 4 are deemed to prevail over those set forth in Proposition 8.* [Citations.]" (*In re York*, *supra*, 9 Cal.4th at p. 1140, fn. 4, italics added, original italics omitted.)

The source of the California Constitution's bail provisions was significant in the statutory analysis we conducted in *In re York*. Had the provisions of Proposition 8's article I, section 28, subdivision (e) taken effect, they quickly would have disposed of York's claim that the sole legitimate purpose of imposing conditions for OR release was to ensure the defendant's presence at the hearing, because the language proposed by Proposition 8 *specified* that considerations other than ensuring a defendant's presence at the proceeding *could* be considered in the context of a decision to grant an OR release, just as other considerations were relevant in setting bail. Having determined instead that it was the language of Proposition 4 that prevailed, however, we proceeded to analyze the ambiguities in section 1318 without regard to the directives that would have been controlling under Proposition 8.

Undaunted, the People contend that in *In re York*, *supra*, 9 Cal.4th 1133, we were not called upon to consider whether Propositions 4 and 8 might be harmonized and both be given effect, and that we did not consider the applicability of our earlier decision in *Yoshisato v. Superior Court* (1992) 2 Cal.4th 978 [9 Cal.Rptr.2d 102, 831 P.2d 327]. That decision drew a distinction between the situation of two competing or alternative initiative measures, only one of which could prevail, and that of two measures presented to the voters as complementary or supplementary. In the latter situation, the two measures may be compared section by section, giving effect to both so long as there is no direct conflict. (*Id.* at pp. 987–988, 991–992.) The People insist that Propositions 4 and 8 were complementary, not competing. Contending there is no conflict between each proposition's bail and OR provisions, the People urge that the provisions of each proposition can be given effect.

Although in *In re York* we did not analyze at any length the point presently raised, we did cite *Yoshisato* in support of our conclusion that the provisions of Proposition 4 prevailed over those of Proposition 8. (*In re York, supra,* 9 Cal.4th at p. 1140, fn. 4.) It is apparent we believed Propositions 4 and 8 contained competing measures respecting bail and OR release that could not both be given effect, and we held that because Proposition 4 had received more votes, that proposition must be given effect over the competing measure. Moreover, our current review of the ballot pamphlet for the 1982 primary election, at which both Propositions 4 and 8 were proposed, demonstrates that the measures were not presented to the voters as complementary. On the contrary, opponents of Proposition 8 (including a member of the Legislature that had voted unanimously in favor of placing Proposition 4 on the ballot) warned that the former measure would enact radical changes that would restrict individual liberty and harm "true efforts to fight crime," adding: "CONSIDER THESE EFFECTS OF PROPOSITION 8: [¶] Takes away everyone's right to bail. (Compare Proposition 4, which targets only violent felons.)" (Ballot Pamp., Primary Elec. (June 8, 1982) rebuttal to argument in favor of Prop. 8, p. 34.)

The Legislature, as the proponent of Proposition 4, was concerned with improving public safety by imposing a measured restriction on the right of violent felons to bail, but the proposition left preexisting OR provisions intact. (The ballot materials did not discuss the subject of OR release at all.) Proponents of Proposition 8 would have eliminated the general right to bail, substituting a provision granting courts greater discretion to deny bail, and placing restrictions on access to bail *different* from those proposed by the Legislature in Proposition 4. Proposition 8 explicitly would have imposed these restrictions on OR release, as well.

A section-by-section comparison of Propositions 4 and 8 demonstrates the direct conflict between the two measures. Proposition 8 would have repealed California Constitution article I, section 12 (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, p. 33), while Proposition 4 amended that provision. (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 4, p. 17.) Proposition 8 would have rescinded the court's discretion to grant OR release for any serious felony (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, p. 33), while Proposition 4 left the court's preexisting discretion intact without any restriction. (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 4, p. 17.) Proposition 4 stated that all accused persons "shall" be admitted to bail, subject to certain limitations (*ibid.*), while Proposition 8 would have rendered bail discretionary in all cases and would have extended the restrictions it imposed upon bail to OR release. (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 8, p. 33.) In view of these circumstances, we adhere to the view that the amendments to article I, section 12 proposed

by Proposition 4 took effect, and that the provisions of article I, section 28, subdivision (e) proposed by Proposition 8 did not take effect.

The People contend that even if, as we have concluded, article I, section 12, rather than article I, section 28, subdivision (e), represents the governing constitutional OR provision, section 859b still would be unconstitutional if it were interpreted to restrict the discretion of the magistrate to deny OR release on the basis of public safety concerns. Because article I, section 12 provides in relevant part that "[a] person may be released on his or her own recognizance in the court's discretion," the People argue that any statutory provision purporting to provide for OR release without affording the court discretion to deny such release on public safety grounds violates this provision as well as the separation-of-powers doctrine, by improperly interfering with the court's constitutionally granted discretion. In essence, the People contend that section 859b, if it is interpreted as mandatory rather than permissive, would be inconsistent with California Constitution article I, section 12 and would violate the principle of separation of powers, because "[i]f section 859b requires the release of every accused OR, without exception, whenever the prosecution obtains a continuance for good cause, there is no discretion left, and the constitutional authority under article [I], section 12, to grant OR releases 'in the court's discretion' will have been removed by operation of statute."

■ The People's argument in this regard misapprehends the subject and scope of the bail and OR provisions of article I, section 12. Those provisions establish the circumstances under which an accused person possesses a constitutional right to be released on bail pending trial, and authorize a court, as an alternative to requiring the posting of bail, to permit an accused to be released on his or her own recognizance in the court's discretion. These constitutional provisions do not purport to address the circumstances under which, once a prosecution has begun, the court may order the criminal proceeding dismissed (with the resultant release of the defendant from custody) or order other remedies for delay in prosecution—such as the OR release of an in-custody accused.

Section 859b—in providing for the OR release of an in-custody accused as an alternative to dismissal when the prosecution for good cause obtains a continuance of the preliminary examination beyond the statutorily prescribed 10-day period—addresses a circumstance that does not fall within the purview of California Constitution article I, section 12. As the People must acknowledge, article I, section 12 never has been interpreted to preclude the Legislature from prescribing *dismissal* of a proceeding—with the resultant release of the defendant without condition—when the prosecution is unable to proceed with the preliminary examination within 10 days. For similar reasons, article I, section 12 does not preclude the Legislature from adopting a

lesser remedy or sanction when a defendant is not afforded a preliminary examination within the time specified by statute but the prosecution has established good cause for a continuance.

Even in those situations to which article I, section 12's OR provision *is* directed, namely, when a defendant is placed on OR as an alternative to being released on bail, article I, section 12 cannot properly be interpreted to mean that a court invariably retains discretion to release a defendant on OR and to preclude the Legislature from, for example, establishing specific crimes for which OR release is *not* permitted. The People's argument that the terms of article I, section 12 should be interpreted to establish that a court has a constitutionally enshrined authority to exercise discretion whether to grant OR release in all situations would invalidate any statutory provision that limits the crimes as to which OR release may be ordered, yet the People cannot point to any authority that supports a conclusion that such statutes would be unconstitutional. Indeed, the People themselves rely upon section 1319 in support of the view that the nature of defendant's crime prohibited his release on OR. Furthermore, other statutes that merely channel the court's discretion to grant or deny OR release also might be implicated under the People's theory. (See, e.g., §§ 1270, 1270.1.)

■ The separation-of-powers doctrine recognizes the significant interrelationship and mutual dependency among the three branches of government. Although courts should "maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government," the Legislature retains certain authority to legislate even with respect to inherent powers of the court, because "the three departments of our government are . . . in many respects mutually dependent. Of necessity the judicial department as well as the executive must in most matters yield to the power of statutory enactments. [Citations.] The power of the legislature to regulate criminal and civil proceedings and appeals is undisputed." (*Brydonjack v. State Bar* (1929) 208 Cal. 439, 442–443 [281 P. 1018]; see also *Obrien v. Jones* (2000) 23 Cal.4th 40, 48 [96 Cal.Rptr.2d 205, 999 P.2d 95] [the separation-of-powers doctrine "does not command 'a hermetic sealing off of the three branches of Government' "]; *Millholen v. Riley* (1930) 211 Cal. 29, 34 [293 P. 69] ["the [L]egislature may at all times aid the courts and may even regulate their operation so long as their efficiency is not thereby impaired"].) Indeed, the separation-of-powers doctrine "permits actions of one branch that may *significantly affect* those of another branch." (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 662 [128 Cal.Rptr.2d 104, 59 P.3d 174], italics added.)

Various aspects of inherent judicial power may be affected by legislative enactment, including measures limiting the power of contempt (*In re*

*McKinney* (1968) 70 Cal.2d 8, 11–12 [73 Cal.Rptr. 580, 447 P.2d 972]), provisions for peremptory disqualification of a judge upon a party's filing of an affidavit of prejudice pursuant to Code of Civil Procedure section 170.6 (*Solberg v. Superior Court* (1977) 19 Cal.3d 182, 191 [137 Cal.Rptr. 460, 561 P.2d 1148]; *Johnson v. Superior Court* (1958) 50 Cal.2d 693, 695–696 [329 P.2d 5]), and the exercise of legislative power over the appointment of certain members of the State Bar Court. (*Obrien v. Jones, supra,* 23 Cal.4th at pp. 48–49.)

Even when the stake was such a core judicial function as controlling whether a court would be in session or remain closed, we concluded that reasonable legislation permitting counties to direct the superior court to remain closed on certain furlough days did not cross the boundary established by the separation-of-powers doctrine. (*Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45 [51 Cal.Rptr.2d 837, 913 P.2d 1046].) In recognizing the power of the legislative branch to specify furlough days on which the court would remain closed, we recognized, of course, that there are limits upon the actions each branch may take with respect to the others. "The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function. [Citation.] The executive branch, in expending public funds, may not disregard legislatively prescribed directives and limits pertaining to the use of such funds. [Citation.] And the Legislature may not undertake to readjudicate controversies that have been litigated in the courts and resolved by final judicial judgment. [Citations.]" (*Superior Court v. County of Mendocino, supra,* 13 Cal.4th at p. 53.)

Notwithstanding these limitations, we reiterated that *even with respect to inherent judicial powers,* "the Legislature generally may adopt reasonable regulations affecting a court's inherent powers or functions, so long as the legislation does not 'defeat' or 'materially impair' a court's exercise of its constitutional power or the fulfillment of its constitutional function." (*Superior Court v. County of Mendocino, supra,* 13 Cal.4th at pp. 58–59.) Emphasizing that the superior court was levying a facial attack on the constitutionality of the furlough statute, we held it would not be reasonable to conclude that under all circumstances, the furlough days contemplated by the statute would defeat or materially impair the court's fulfillment of its constitutional duties. (*Id.* at p. 60.)

Accordingly, we do not accept the view that California Constitution article I, section 12 confers judicial discretion that must remain free from legislative interference. We do not believe that a constitutional grant of *general* authority to the courts necessarily constitutes a restriction on the power of the

Legislature to place reasonable limits upon a court's exercise of discretion in certain instances—any more than a court's inherent power over its times of operation would bar the Legislature from establishing a limited restriction on that power of the court. Nor do we believe it would defeat or materially impair the courts' exercise of judicial power to permit the Legislature to direct courts to grant or deny OR release under specified circumstances.

Next, the People draw our attention to the circumstance that defendant *could have been* denied bail pursuant to article I, section 12 because of public safety concerns related to the charged crimes. (In fact, the court did set bail for defendant.) The People claim it would be "unreasonable" to conclude that even though he could have been denied bail, defendant nonetheless was entitled to OR release when the magistrate continued the preliminary hearing for good cause. Again, although article I, section 12 governs the right to bail and acknowledges the court's authority to release persons on OR, we do not believe that article I, section 12 addresses the circumstances under which a complaint may be dismissed or the defendant released from custody as an adjunct to the defendant's right to speedy trial. A defendant's eligibility for bail, like his or her eligibility for OR release under provisions other than section 859b, is not at issue under section 859b. The People do not deny that under specified circumstances, section 859b would require an even greater sanction than OR release—dismissal of the complaint. The defendant's ineligibility for bail would have no impact upon the court's obligation to *dismiss* a complaint under section 859b; neither would ineligibility for bail have anything to do with the sanction of OR release pursuant to that statute.

In conclusion, we are mindful of the circumstance that section 859b might require OR release of (or dismissal of charges against) dangerous persons, but, having concluded that neither the terms of article I, section 12 nor the separation-of-powers doctrine renders section 859b's OR provision unconstitutional on its face, this court's role is limited to interpreting the language the Legislature has chosen to employ. We believe it is for the Legislature, not this court, to consider whether the Legislature adequately has balanced public safety concerns against the interest of accused persons in avoiding custody for a prolonged period prior to any determination that there is probable cause to believe the accused committed the charged offense. Thus, the Legislature is free to consider whether additional exceptions should be created, both as to dismissal and OR release, to accommodate other public safety concerns or circumstances such as the illness of the magistrate or the unavailability of an interpreter. Rather extreme hypotheticals were posed at oral argument, such as the defendant who announces an intention not to appear for trial or to commit further crimes of violence. Again, the Legislature may elect to create exceptions for such circumstances. In addition, although we certainly do not mean to minimize public safety as a valid concern, we point out that when the prosecution is unable to proceed within

the statutory period, it has the option of seeking to dismiss the complaint and refiling immediately (§ 1387; see also § 1387.1 [permitting an additional dismissal and refiling for violent felonies]), thereby avoiding any gap in maintaining the defendant in custody. And of course, explicit threats of violence could subject a defendant to rearrest and further prosecution. (§ 422.)

## III

The second issue presented in this case is whether the superior court must set aside an information pursuant to section 995 when a magistrate refuses (in violation of section 859b) to grant OR release to an in-custody defendant. As we shall explain, we conclude that the superior court may not set aside the information on the basis of such an error in the absence of a determination that the error reasonably might have affected the outcome of the preliminary examination.

Section 995 provides that an information shall be set aside upon the defendant's motion if the defendant was committed without probable cause or if "before the filing [of the information] the defendant had not been legally committed by a magistrate." (§ 995, subd. (a)(2)(A).)

As we have explained, the term "legally committed" pertains to the preliminary examination and the order holding the defendant to answer. " 'An information, of course, will not be set aside merely because there has been some irregularity or minor error in procedure in the preliminary examination. [Citation.] But where it appears that, during the course of the preliminary examination, *the defendant has been denied a substantial right*, the commitment is unlawful within the meaning of section 995, and it must be set aside upon timely motion. [Citations.]' " (*Jennings v. Superior Court* (1967) 66 Cal.2d 867, 874 [59 Cal.Rptr. 440, 428 P.2d 304].)

Although some errors such as denial of the right to counsel by their nature constitute a denial of a substantial right, the present case does not fall into that category. We have explained, in the context of a magistrate's error in failing to exercise his or her inherent authority to dismiss pursuant to section 1385, that generally a denial of substantial rights occurs only if the error "reasonably might have affected the outcome." (*People v. Konow* (2004) 32 Cal.4th 995, 1024–1025 [12 Cal.Rptr.3d 301, 88 P.3d 36]; see also *Jennings v. Superior Court, supra*, 66 Cal.2d at p. 875; *Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1534 [36 Cal.Rptr.3d 854]; *People v. Pennington* (1991) 228 Cal.App.3d 959, 964–965 [279 Cal.Rptr. 85] [because defense counsel's potential conflict of interest could not have affected the preliminary examination, it did not constitute a denial of a substantial right].) By this language, we do not mean that the defendant must demonstrate that it is

reasonably *probable* he or she would not have been held to answer in the absence of the error. Rather, the defendant's substantial rights are violated when the error is not minor but "reasonably *might* have affected the outcome" in the particular case. (*People v. Konow, supra*, 32 Cal.4th at p. 1024, italics added.)

 We believe that a failure to grant OR release pending the preliminary examination in violation of section 859b constitutes an error subject to the general test for prejudice because, unlike the absence of counsel, for example, the error is not inherently prejudicial. The error does not implicate a core right *at the preliminary examination itself.* In addition, the error is not one for which the pertinent statute itself calls for dismissal—unlike a delay in the preliminary examination beyond the 10-day period without good cause or for more than 60 days without a time waiver (§ 859b), or when the preliminary examination improperly is not conducted in a single session. (§ 861.) In enacting and amending section 859b, the Legislature elected not to require dismissal when there is good cause for a continuance, and it would be anomalous to require that the charges be set aside at the section 995 hearing when the preliminary examination was continued for good cause.

We certainly agree with defendant that, as a general proposition, liberty constitutes a fundamental right, but the specific right to liberty contemplated by section 859b's OR provision applies to the necessarily limited period between the order granting a continuance and the preliminary examination and ordinarily does not have any effect on the fairness or outcome of the proceedings at the preliminary examination. Indeed, even when a court orders OR release pursuant to section 859b, the defendant may remain in custody if the prosecutor obtains a dismissal and refiles the complaint. (§ 1387.) We note also that a defendant's OR status may be revoked after he or she is held to answer—the finding of probable cause constitutes a changed circumstance that may warrant reconsideration of custody status. (See *In re Annis* (2005) 127 Cal.App.4th 1190, 1199–1200 [26 Cal.Rptr.3d 321]; see also 4 Witkin & Epstein, Cal. Criminal Law, *supra*, Pretrial Proceedings, §§ 84–86, pp. 283–285; 2 Erwin et al., Cal. Criminal Defense Practice (1981) § 41.16(8)(c), p. 41-65.)[8]

If the prosecutor can avoid OR release by obtaining a dismissal and refiling the complaint, and a defendant who properly was released on OR after the prosecution secured a continuance for good cause can be remanded at the time of the probable cause determination, it would be out of proportion to the potential for impact upon the fairness of the preliminary examination to hold that a failure to grant OR release pending the preliminary examination

---

[8] The issue of custody also is subject to reconsideration for cause once the information has been filed. (§ 1289.)

necessarily gives the defendant a remedy that extends *beyond* the probable cause determination—a remedy that could be draconian from the perspective of the prosecution.

According to defendant, the goal served by the right to have a preliminary examination conducted within 10 days is the same goal served by the right to OR release when the prosecution secures a continuance of the preliminary examination for good cause. In both instances, he claims, the Legislature intended to prevent prolonged incarceration prior to a probable cause determination for accused persons who lack resources to post bond. We believe that although the same general goal is at stake, the Legislature itself contemplated different remedies for the denial of each of these two rights, as can be seen from the text of section 859b itself. Specifically, that statute provides that delay beyond the 10-day period without good cause should result in dismissal, while delay with good cause does *not* require dismissal. If we were to hold that a defendant who was denied OR release in violation of section 859b automatically would be entitled to have the charges set aside pursuant to section 995, we would be supplying a dismissal remedy that the Legislature chose to omit. In sum, we do not believe that, when a continuance for *good cause* has been granted, error in determining custody status necessarily implicates a substantial right pursuant to section 995.

In other contexts, we have noted that OR release is comparable to bail; in fact, it is " 'simply an alternative to bail.' " (*People v. Jimenez* (1993) 19 Cal.App.4th 1175, 1178 [24 Cal.Rptr.2d 137].) We have not discovered any authority suggesting that the remedy, when excessive bail has been set prior to the preliminary examination, is an order setting aside the information. Rather, it is settled that defendants may correct error in the setting of bail by seeking a writ of habeas corpus or other extraordinary writ ordering reconsideration of custody status or release. (*Ibid.*; see also *Ex Parte Newbern* (1961) 55 Cal.2d 500, 503 [11 Cal.Rptr. 547, 360 P.2d 43]; *In re McSherry* (2003) 112 Cal.App.4th 856, 859–860 [5 Cal.Rptr.3d 497] [noting that the court can "grant relief without an evidentiary hearing if the return admits allegations in the petition that, if true, justify relief"]; *In re Alberto, supra,* 102 Cal.App.4th 421, 431.) The same procedures are available when a court fails to grant OR release pursuant to section 859b. (See *In re York, supra,* 9 Cal.4th at p. 1139 [petitioners employed a petition for writ of habeas corpus to challenge conditions of OR release]; *In re Annis, supra,* 127 Cal.App.4th at p. 1192 [the defendant's habeas corpus petition challenged revocation of release on OR].)

Defendant objects that in *Landrum v. Superior Court, supra,* 30 Cal.3d 1, we held that violation of an in-custody defendant's right to have a preliminary examination conducted within 10 days of the arraignment as provided by *former* section 859b constituted a violation of a substantial right within the

meaning of section 995. (*Landrum v. Superior Court, supra*, 30 Cal.3d at pp. 5–6, 11–12.) That case is distinguishable. At the time of our decision, the defendant had an *absolute* right to a preliminary examination within 10 days, without regard to any claim of good cause for continuance, and case law held that violation of this absolute right required dismissal. (As previously noted, the statute subsequently was amended to specify the circumstances in which a violation of the 10-day rule required dismissal and when, by contrast, the remedy would be OR release.) Our holding in *Landrum* does not extend beyond the situation in which the defendant has an absolute right to have a preliminary examination conducted within 10 days, that is, when good cause for a continuance does not exist.

Nor does our decision in *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519 [165 Cal.Rptr. 851, 612 P.2d 941] provide support for defendant. In that case, we held that, unlike the situation of pretrial review pursuant to section 995, posttrial review of error occurring at the preliminary examination requires a showing of prejudice. (*People v. Pompa-Ortiz*, at p. 529.) In the course of our discussion of the appropriate standard of review on appeal, we commented that "[t]he right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities. At that time, by application for extraordinary writ, the matter can be expeditiously returned to the magistrate for proceedings free of the charged defects. We follow this approach in other contexts. In *People v. Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], for example, we held that denial of defendant's right to trial within a prescribed statutory time period was not reversible error on appeal in the absence of a showing of prejudice. If the issue is raised before trial, however, prejudice is presumed and the information is dismissed." (*People v. Pompa-Ortiz, supra*, 27 Cal.3d at p. 529.)

Our decision in *People v. Pompa-Ortiz* must not be read overbroadly. That case did not establish that *any and all* irregularities that precede or bear some relationship to the preliminary examination require that the information be set aside pursuant to section 995; later decisions such as *People v. Konow, supra*, 32 Cal.4th 995, have made this clear. Under any other interpretation, defendant would be entitled to dismissal of the information even if, following improper denial of his request for OR release, he had been able to post bail immediately and thus had not been in custody while awaiting the preliminary examination. Our decision in *Pompa-Ortiz* does not require such an unreasonable result.

We acknowledge that the *Wilson* decision cited in *People v. Pompa-Ortiz, supra*, 27 Cal.3d 519, and other cases noted by defendant have declared that, prior to trial, an incarcerated defendant may prevail on a motion to dismiss premised upon a violation of his or her speedy trial rights—specifically, a

violation of section 1382—without any showing of prejudice. These cases are distinguishable from the present case, however, because they were based in large part on the circumstance that the relevant statute required dismissal as the proper remedy when, without a showing of good cause, the defendant had not been brought to trial within the statutory period. (See *Serna v. Superior Court* (1985) 40 Cal.3d 239, 263 [219 Cal.Rptr. 420, 707 P.2d 793]; *People v. Wilson, supra,* 60 Cal.2d at p. 151.)

The Court of Appeal relied upon dictum in another decision of this court, *Stroud v. Superior Court* (2000) 23 Cal.4th 952 [98 Cal.Rptr.2d 677, 4 P.3d 933]. In that case we examined the requirement in section 861 that a preliminary examination be held within a single session. The statute requires the magistrate to dismiss the complaint if the preliminary examination is not held in a single session unless good cause has been shown. We concluded that under the particular facts of the case, the magistrate had good cause to interrupt the preliminary examination for a day in order to attend to his administrative duties. (*Stroud,* at p. 957.)

Because the magistrate had *not* abused his discretion, we did not decide the more general question whether a violation of section 861's single-session rule constitutes a denial of a substantial right requiring that the charges be set aside pursuant to section 995. In a footnote, we observed, *without deciding*, that if a violation of section 861 occurred, the magistrate himself or herself would be required to dismiss the complaint under the terms of the statute. We surmised that if the magistrate refused to dismiss, "the defendant's subsequent commitment was not legal, and he was thus deprived of a substantial right for which *pretrial* relief is available under section 995, even if he suffered no prejudice beyond the interruption or delay itself." (*Stroud v. Superior Court, supra,* 23 Cal.4th at p. 963, fn. 4 [but noting possible support for a contrary conclusion in *People v. Guevara* (1982) 132 Cal.App.3d 193, 201–202 [183 Cal.Rptr. 18]].)

This court's dictum in *Stroud* is distinguishable. Like the current provisions of section 859b that govern failure to conduct a preliminary examination for an in-custody defendant within 10 days *without* good cause and failure to hold the preliminary examination within an outer boundary of 60 days, section 861 itself requires dismissal as a sanction. As we have observed above, such a sanction is absent from the portion of section 859b governing continuance of a preliminary examination for good cause.

Defendant objects that without the remedy of setting aside the charges pursuant to section 995, the OR-release provision of section 859b would be unenforceable, leaving accused persons in custody pending delayed probable cause determinations. Defendant claims that other remedies are unlikely to

afford relief in a timely manner, that is, before the defendant's custody status is reconsidered at the preliminary examination.

We believe these concerns are misplaced. This is not a situation in which the opposing party has the power to frustrate the defendant's right to OR release or in which the court may abuse its discretion. The statute *requires the court* to release the defendant on OR when the prosecution establishes good cause for a continuance, and now that we have clarified that the statute imposes a *mandatory* duty upon courts to release defendants on OR in the absence of a showing that any of the exceptions to section 859b apply, we do not anticipate that courts nonetheless will defy our holding and refuse to release defendants.

Further, if a court should err in this regard by denying OR release, an adequate remedy exists. The defendant may seek release by filing a petition for writ of habeas corpus or other extraordinary writ just as a defendant may challenge the amount set as bail. Habeas corpus proceedings can be quickly resolved, and the defendant may be released pending a decision. (*People v. Romero* (1994) 8 Cal.4th 728 [35 Cal.Rptr.2d 270, 883 P.2d 388].) As we have observed: "If the claim asserted in the petition has apparent merit and there is some urgency because the petition, for example, alleges entitlement to release on bail or challenges the validity of a contempt order, the court may require the custodian or real party in interest to submit the return to the writ or order to show cause *as little as 24 hours* after being served with the petition. [Citation.] *Pending the outcome of the habeas corpus proceeding, the court may order that the petitioner be temporarily released from custody.* [Citations.] Once the return is received, the court may grant relief without an evidentiary hearing if there are no material contested issues of fact." (*Id.* at p. 744, italics added.) It is unlikely there will be any disputed issues of fact if the magistrate has refused to follow section 859b's OR-release provision, so an evidentiary hearing should be unnecessary in most cases and the court should be able to decide the matter with a minimum of delay.

Defendant contends it is unnecessary for this court to reach the issues we have discussed, because the prosecutor assertedly failed to establish good cause to continue the preliminary examination and defendant therefore was entitled to a dismissal pursuant to the provision of section 859b applicable to continuances ordered without good cause. According to the People, defendant has forfeited the claim that good cause for the continuance did not exist. The Court of Appeal declined to reach the issue of good cause or to decide whether defendant had forfeited the claim, because it affirmed the trial court's judgment on other grounds. Because we reverse the judgment rendered by the

Court of Appeal, that court on remand may consider the question of whether good cause existed to continue the preliminary examination.[9]

## IV

For the foregoing reasons, the judgment of the Court of Appeal is reversed and the matter is remanded to that court for further proceedings consistent with this opinion.

Kennard, J., Moreno, J., and Corrigan, J., concurred.

**CHIN, J.,** Concurring and Dissenting.—I concur only with the judgment. I agree that the superior court erred in granting defendant's motion to set aside the information pursuant to Penal Code section 995,[1] but disagree that the magistrate erred in denying defendant release on his own recognizance (OR). Under the California Constitution, defendant had no right to be released on OR pending his preliminary examination, and the magistrate acted reasonably within the bounds of his discretion in denying defendant OR release for public safety reasons. (Cal. Const., art. I, § 12 (hereafter article I, section 12).) Because defendant was not denied any right—let alone a substantial right—at the preliminary hearing within the meaning of section 995, I would reverse the contrary judgment of the Court of Appeal.

*The conflict between article I, section 12 and section 859b.*

Article I, section 12 states, in pertinent part, that "A person *may* be released on his or her own recognizance *in the court's discretion.*"[2] (Italics added.) It follows logically from this provision that, as a matter of constitutional prerogative, a trial court may grant, or not grant, OR release in its sound discretion. Article I, section 12 directs a court or magistrate, in granting or denying OR release or in imposing OR conditions, to weigh considerations relating to public safety that extend beyond those intended to

---

[9] Like the Court of Appeal, we decline to reach the People's various forfeiture claims, because those claims were not timely raised in the appellate court. In addition, the People failed to raise the claims in their petition for review in this court. (See Cal. Rules of Court, rule 29(b)(1).)

[1] Except as otherwise noted, all further statutory references are to the Penal Code.

[2] Article I, section 12 states, in full: "A person shall be released on bail by sufficient sureties, except for:

"(a) Capital crimes when the facts are evident or the presumption great;

"(b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or

"(c) Felony offenses when the facts are evident or the presumption great and the court finds

ensure subsequent court appearances. (*In re York* (1995) 9 Cal.4th 1133, 1143–1144 & fn. 7, 1150 [40 Cal.Rptr.2d 308, 892 P.2d 804] (*York.*)

In contrast, section 859b provides that, if the defendant is in custody and the preliminary examination is set or continued beyond the 10-court-day period for good cause, "the defendant *shall* be released pursuant to Section 1318" (italics added) unless certain exceptions are met.[3] Only one of the six exceptions arguably is concerned with public safety.[4] Based on the language of section 859b, the majority holds that a court has *no* discretion to deny OR release in the absence of the specified exceptions, most of which are unrelated to public safety. Thus, section 859b, as construed by the majority, conflicts with the plain words of article I, section 12.

It is fundamental that a constitutional provision prevails over a conflicting statutory provision. (*Hart v. Jordan* (1939) 14 Cal.2d 288, 292 [94 P.2d 808]; *Howard Jarvis Taxpayers Assn. v. City of Roseville* (2003) 106 Cal.App.4th 1178, 1188 [132 Cal.Rptr.2d 1].) As explained below, both the language and the history of the OR provision in article I, section 12 establish that: (1) OR release is not a matter of right but a matter of sound court discretion, and (2) public safety is a relevant factor, which a court should consider in deciding OR release.

The relevant language is "[a] person *may* be released on his or her own recognizance *in the court's discretion*." (Art. I, § 12, italics added.) As the

---

based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released.

"Excessive bail may not be required. In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case.

"A person may be released on his or her own recognizance in the court's discretion."

[3] Under section 859b, the defendant need not be released on OR if:

"(1) The defendant requests the setting of continuance of the preliminary examination beyond the 10-court-day period.

"(2) The defendant is charged with a capital offense in a cause where the proof is evident and the presumption great.

"(3) A witness necessary for the preliminary examination is unavailable due to the actions of the defendant.

"(4) The illness of counsel.

"(5) The unexpected engagement of counsel in a jury trial.

"(6) Unforeseen conflicts of interest which require appointment of new counsel."

[4] The majority asserts that the Legislature accounted for public safety interests in section 859b by authorizing the denial of OR release when there is a capital charge or the defendant has acted to render a witness unavailable. (Maj. opn., *ante*, at p. 871.) However, the witness provision applies even if the defendant caused the unavailability by nonviolent or nonthreatening means. Thus, the witness provision appears more concerned with preventing defendants from benefiting from their wrongdoings.

majority acknowledges in another context, the word "may" is ordinarily deemed permissive. (Maj. opn., *ante*, at p. 869.) Here, interpreting the word "may" as permissive is consistent with the language "in the court's discretion." This language, providing only for discretionary consideration of an application for OR release, leaves no room for recognizing a statutory right to OR release. (*Van Atta v. Scott* (1980) 27 Cal.3d 424, 452 [166 Cal.Rptr. 149, 613 P.2d 210] (*Van Atta*) [creation of right to OR release would contravene OR provision in article I, section 12].)

The history of article I, section 12 provides further support. That provision was enacted by ballot Proposition 7, adopted by the voters in the November 5, 1974, General Election following a recommendation by the California Constitutional Revision Commission. (*Van Atta, supra,* 27 Cal.3d at p. 453; *Dant v. Superior Court* (1998) 61 Cal.App.4th 380, 384 [71 Cal.Rptr.2d 546] (*Dant*).) Proposition 7 provided: "*A person shall be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required.* [¶] A person may be released on his or her own recognizance in the court's discretion." (Ballot Pamp., Gen. Elec. (Nov. 5, 1974), text of Prop. 7, p. 71; *Van Atta, supra,* 27 Cal.3d at p. 452, fn. 33.) The analysis by the Legislative Analyst explained that: "Instead of being released on bail *prior to trial*, the accused person may be released on his or her own recognizance at the discretion of the court." (Ballot Pamp., Gen. Elec. (Nov. 5, 1974), analysis of Prop. 7 by Legis. Analyst, p. 26, italics added.)

Previously, in 1971, the California Constitution Revision Commission had recommended amending various provisions of the California Constitution. At that time, the bail provisions of the Constitution were contained in article I, section 6, but no mention was made of OR release in the Constitution. (*Dant, supra,* 61 Cal.App.4th at p. 385.) The commission proposed an OR clause, which recognized the "well-established practice of releasing persons accused of crimes on their own recognizance." (Cal. Const. Revision Com., Proposed Revision of Cal. Const., pt. 5, (1971) p. 19.)

The revision commission noted that the proposed OR provision would explicitly incorporate current OR practices that already existed in the law. The commission stated: "*The 'Own Recognizance' system presents a desired alternative to the bail system,* which frequently works an injustice on those who cannot afford to post a bail bond. An individual who may be released on his own recognizance is better able to defend himself and to avoid incarceration until proved guilty. *It is important to note that while release on bail is a matter of right, release on personal recognizance is entirely at the court's discretion and is not a matter of right.* The Commission recommendation will bring constitutional language more in line with actual practices in the release

of criminal defendants and more consistent with contemporary concepts of social equity and fundamental justice for all persons, regardless of their economic status." (Cal. Const. Revision Com., Proposed Revision of Cal. Const., pt. 5, *supra*, at p. 19, italics added; see also (Ballot Pamp., Gen. Elec. (Nov. 5, 1974), analysis of Prop. 7 by Legis. Analyst, p. 26.)

When article I, section 12 was proposed and enacted, then Penal Code section 1318 stated, in pertinent part: "Upon good cause being shown, any court or magistrate *who could release a defendant from custody upon his giving bail* may release such defendant on his own recognizance if it appears to such court or magistrate that such defendant will surrender himself to custody as agreed, by following the provisions of this article." (Pen. Code, former § 1318, added by Stats. 1959, ch. 1340, § 1, p. 3612 and repealed by Stats. 1979, ch. 873, § 11, p. 3042, operative Jan. 1, 1981.)[5] Also, consistent with Proposition 7, then section 1318.2 provided: "The powers granted to a court or magistrate by this article are purely discretionary and permissive. This article does not give any defendant the right to be released on his own recognizance." (Pen. Code, former § 1318.2, added by Stats. 1959, ch. 1340, § 1, p. 3612 and repealed Stats 1979 ch. 873, § 11, p. 3042, operative Jan. 1, 1981.)

As shown in its history, article I, section 12 (as originally enacted) expressly provided a right to bail, while OR release was only a discretionary alternative to release on bail as consistent with then sections 1318 and 1318.2. (See *Van Atta, supra*, 27 Cal.3d at pp. 452–453; *In re Smiley* (1967) 66 Cal.2d 606, 613 [58 Cal.Rptr. 579, 427 P.2d 179] [OR procedure is "simply an alternative to bail in appropriate cases"].)

In 1979, the Legislature reorganized the bail statutes and provided the procedural framework for OR releases. (Stats. 1979, ch. 873, p. 3037; *Dant, supra*, 61 Cal. App.4th at p. 385.) As part of the reorganization, it added newly enacted sections 1318 and 1270. (Stats. 1979, ch. 873, §§ 4, 12, pp. 3039, 3042–3043.) The OR provision in former section 1318 was moved to section 1270. Section 1270, subdivision (a) read, in pertinent part, "Any person, who has been arrested for or charged with an offense other than a capital offense *may* be released on his or her own recognizance by a court or magistrate *who could release a defendant from custody upon the defendant giving bail . . . .*"[6] (Stats. 1979, ch. 873, § 4, p. 3039, italics added.) The 1979

---

[5] In 1973, the Legislature amended section 1318 to include within its provision, "a defendant arrested upon an out-of-county warrant." (Stats. 1973, ch. 620, § 2, p. 1144.)

[6] The same language is contained in the current section 1270.

statutory scheme regarding OR release remained consistent with article I, section 12.

In 1982, the voters were presented with a ballot measure proposing an amendment of article I, section 12 to allow courts to deny release on bail in the interest of public safety. (Ballot Pamp., Primary Elec. (June. 8, 1982), Prop. 4, pp. 16–17.) The Attorney General's official summary described the measure as adding provisions to the Constitution "prohibiting release of persons on bail when [a] court makes specified findings." (Ballot Pamp., Primary Elec. (June 8, 1982) Prop. 4, Official Title and Summary prepared by Atty. Gen., p. 16.) It explained, "Release on felony offenses is prohibited where: (1) Acts of violence on another person are involved and court finds substantial likelihood the person's release would result in great bodily harm to others. (2) The person has threatened another with great bodily harm and court finds substantial likelihood the person would carry out the threat." (*Ibid.*) Similarly, the Legislative Analyst explained the proposal "would broaden the circumstances under which the courts may deny bail," specifically, in felony cases under the above two sets of circumstances. (Ballot Pamp., Primary Elec. (June 8, 1982) analysis of Prop. 4 by Legis. Analyst, p. 16.)

Supporters of Proposition 4 touted the measure as a "significant break-through on behalf of public safety," allowing "judges to deny release on bail to a defendant who is accused of committing any felony, be it violent or nonviolent, in clear cases where the court finds based on clear and convincing evidence that the defendant has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released." (Ballot Pamp., Primary Elec. (June 8, 1982) Prop. 4, argument in favor of Prop. 4, p. 18.) After explaining to the electorate that "[p]resent law does not allow judges in making bail decisions to consider public safety," Proposition 4 supporters stressed the measure would "provide the judges with a necessary legal tool to protect the public from repeat violent offenders." (*Ibid.*)

Significantly, Proposition 4 retained article I, section 12's provision regarding discretionary OR release originally enacted by the voters in 1974. (Ballot Pamp., Primary Elec. (June 8, 1982) text of Prop. 4, p. 17.) In passing Proposition 4 on June 8, 1982, why would the voters approve of placing express public safety limitations on the constitutional bail provision but not the OR release provision?[7] Because the prior constitutional bail provision

---

[7] In 1994, the voters passed Proposition 189 which amended article I, section 12 by inserting " 'or felony sexual assault offenses on another person.' " (Historical Notes, 1A West's Ann. Cal. Const. (2002 ed.) foll. art. I, § 12, p. 89.)

gave a defendant an absolute right to bail in noncapital cases and gave *no* discretion to the court to deny bail, even where public safety was at stake. In contrast, the constitutional OR provision already recognized the court's discretion to deny OR release, whether or not based on public safety considerations. In short, there was no comparable need to place limitations on the granting of OR release.

From the history of article I, section 12, I infer the following: (1) although pretrial bail continues to be a matter of right, the voters considered public safety a paramount factor in determining whether that right even exists and (2) the voters also wanted judges, in granting OR release as a discretionary alternative to bail, to consider the same public safety interests. (See *York, supra,* 9 Cal.4th at pp. 1143–1144 & fn. 7 [article I, section 12's OR provision incorporates public safety concerns of bail provision].) To state these principles another way: "Any person who has been arrested for, or charged with, an offense other than a capital offense may be released on his or her own recognizance by a court or magistrate *who could release a defendant from custody upon the defendant giving bail . . . .*" (§ 1270, italics added.)

Here, in denying defendant OR release, the magistrate noted that "the file is replete with incidents that obviously cause great concern." Those "incidents" included serious allegations: that defendant had dangled his two-year-old daughter over the balcony railing of his second-story apartment; that he had hit his wife in the face with his fist; that he had threatened to cut a neighbor's throat; and that he had choked and decapitated the family cat. Moreover, defendant was charged with serious felonies and there had been some question about his mental competence. The magistrate exercised his discretion by denying OR release for public safety reasons.

The majority does not dispute that the magistrate exercised his discretion reasonably. Rather, it finds that he had *no* discretion to deny OR release because none of section 859b's exceptions existed. How does the majority arrive at that finding despite the conflict between section 859b and article I, section 12? Without any citation to authority, it asserts that article I, section 12 simply does not apply to OR release when used as a lesser remedy in place of dismissal "when the prosecution for good cause obtains a continuance of the preliminary examination beyond the statutorily prescribed 10-day period." (Maj. opn., *ante,* at p. 878; see *id.* at p. 881.) It reasons: "[A]rticle I, section 12 never has been interpreted to preclude the Legislature from prescribing *dismissal* of a proceeding—with the resultant release of the defendant without condition—when the prosecution is unable to proceed with the preliminary examination within 10 days. For similar reasons, article I, section 12 does not

preclude the Legislature from adopting a lesser remedy or sanction when a defendant is not afforded a preliminary examination within the time specified by statute but the prosecution has established good cause for a continuance." (Maj. opn., *ante*, at pp. 878–879; see *id.* at p. 881.)

This argument is a "red herring," i.e., an attempt to divert attention from the real question. (Oxford English Dict., <http://dictionary.oed.com> [as of June 5, 2006].) Article I, section 12 never has been interpreted to preclude the Legislature from prescribing dismissal of a proceeding, because that constitutional provision has nothing to do with court dismissals. Even if the Legislature can require the greater sanction of dismissal, it does not necessarily follow that it can adopt any remedy or sanction short of dismissal without regard to conflicting constitutional provisions.

Article I, section 12 addresses bail and OR releases at the pretrial stage without any specified exceptions relating to particular stages of the pretrial proceedings. (*York, supra,* 9 Cal.4th at pp. 1139–1140.) In order to construe the OR provision as the majority does, it would be necessary to insert additional language to that provision to the effect that: "A person may be released on his or her own recognizance in the court's discretion, *except: absent certain limited circumstances, a person must be released on his or her own recognizance without regard to public safety where there is a delay in prosecution even for good cause.*" "To insert [such] words into this section of the Constitution would give to it an added meaning not to be found in the definite language of the section as adopted by the people. 'Courts are no more at liberty to add provisions to what is declared [in the Constitution] in definite language, than they are to disregard existing express provisions [of the Constitution].' [Citations.]" (*Ross v. City of Long Beach* (1944) 24 Cal.2d 258, 260 [148 P.2d 649].)

There is another reason why the majority's assertion of the inapplicability of article I, section 12 should be rejected. Section 1318 codifies the court's authority to place reasonable conditions on a criminal defendant who is released on OR. (*York, supra,* 9 Cal.4th at p. 1144.) Article I, section 12 is the source of that authority, as well as the authority to grant or deny OR release. (*York,* at p. 1143, fn. 7.) Significantly, section 859b expressly incorporates section 1318. Thus, it would be anomalous to conclude that article I, section 12 applies to a section 859b situation regarding the imposition of OR conditions, but does not apply regarding the discretionary authority to deny OR release.

The majority further argues that, "[e]ven in those situations to which article I, section 12's OR provision *is* directed, namely, when a defendant is placed

on OR as an alternative to being released on bail, article I, section 12 cannot properly be interpreted to mean that a court invariably retains discretion to *release* a defendant on OR and to preclude the Legislature from, for example, establishing specific crimes for which OR release is *not* permitted. (Maj. opn., *ante*, at p. 879, second italics added.) Again, the majority presents a red herring by proffering hypotheticals that do not apply here. Section 859b does not establish specific crimes for which OR release is not permitted. Rather, it *abolishes* any exercise of discretion by forbidding a court or magistrate from *denying* OR release in the interest of public safety, the very same interests that the voters were concerned with in enacting Proposition 4. Thus, the majority's decision today means that, absent the limited exceptions in section 859b, courts *must* grant OR release to a noncapital defendant who is charged with violent or serious felonies, has failed to appear in court in the past, has threatened others with violence, and has committed past acts of violence.

The majority invokes *general* separation of powers principles as support for its claim that the Legislature may reasonably limit a court's discretion with respect to its *inherent* powers. (Maj. opn., *ante*, at p. 879.) However, here, we have a specific constitutional provision granting express discretionary authority to the courts. Nevertheless, I do not dispute that the Legislature has the authority to implement the standards and procedures set forth in article I, section 12 by establishing reasonable guidelines and restrictions under which courts will exercise their discretion. In other words, the Legislature can reasonably define what factors contribute to an abuse of discretion and forbid the unreasonable exercise of discretion.

But I believe that, unlike section 859b, sections 1319, 1270, and 1270.1 merely codify the very same public safety interests that are contained in article I, section 12 and designate those interests and other factors (including flight risk and the defendant's failure to appear in the past) that a court should consider in its reasonable exercise of discretion. Thus, sections 1319, 1270, and 1270.1 are consistent with article I, section 12. In contrast, section 859b (in taking away *all* court discretion absent exceptional circumstances) "materially impair[s]" the trial court's exercise of its express constitutional power. (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1103 [29 Cal.Rptr.3d 249, 112 P.3d 636]; see also maj. opn., *ante*, at p. 887 ["[t]he statute *requires the court* to release the defendant on OR when the prosecution establishes good cause for a continuance, and now that we have clarified that the statute imposes a *mandatory* duty upon courts to release defendants on OR in the absence of a showing that any of the exceptions to section 859b apply, we do not anticipate that courts nonetheless will defy our holding and refuse to release defendants"].)

A defendant who is unable to post reasonable bail has no constitutional right to be free from confinement on OR before trial. (*York, supra*, 9 Cal.4th at p. 1149.) Nevertheless, a defendant's statutory right to a timely preliminary hearing and the seriousness of keeping a defendant in custody before a determination of probable cause are important considerations. However, courts should have the discretion to make OR decisions on a case-by-case basis, weighing and balancing those considerations and the hardship on the defendant with other factors such as the length of the continuance and custody before the preliminary hearing, the potential danger to other persons if the defendant is released, the seriousness of the charged offense, the previous criminal record of the defendant, and the probability that the defendant will appear for subsequent court proceedings if released. If courts have the broad discretion to weigh considerations relating to the public safety in imposing OR conditions (*York, supra*, 9 Cal.4th at pp. 1144–1145), so too should they have that same broad discretion in determining OR release.

I therefore conclude that section 859b on its face conflicts with article I, section 12 because: (1) it establishes pretrial OR release as a matter of right absent exceptional circumstances, most of which are unrelated to public safety and (2) it removes a court's discretion in considering public safety as a relevant factor in deciding OR release. Consequently, I urge the Legislature to amend section 859b in a manner that is consistent with the state Constitution.

Baxter, J., and Werdegar, J., concurred.

Respondent's petition for a rehearing was denied August 23, 2006, and the opinion was modified to read as printed above. Corrigan, J., did not participate therein. Werdegar, J., was of the opinion that the petition should be granted.