Filed 4/1/22  Ballard v. Diaz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHRISTOPHER BALLARD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RALPH M. DIAZ, as Secretary of Department of Corrections and Rehabilitation, etc.,<br><br>    Defendant and Respondent. | F082216<br><br>(Super. Ct. No. 19C0376)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kings County.  Kathy Ciuffini, Judge.

Christopher Ballard, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Rachael A. Campbell, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

Plaintiff Christopher Ballard appeals from an order sustaining the demurrer of the Secretary of the California Department of Corrections and Rehabilitation (CDCR)

---

\*    Before Detjen, Acting P. J., Franson, J. and Meehan, J.

without leave to amend. Ballard contends the court abused its discretion and violated his due process rights by (1) not allowing him to cure the defect in his petition for writ of mandate and (2) granting the Secretary extra time in which to file an opposition to his motion for reconsideration.

To obtain a reversal of a superior court's decision, an appellant must demonstrate two things—error and prejudice resulting from that error. Here, Ballard has not established that he was prejudiced by the order sustaining the demurrer without leave to amend or the denial of his motion for reconsideration because he has not shown a reasonable probability of a more favorable outcome in the absence of the alleged errors. First, his writ petition does not adequately allege the Secretary violated a ministerial duty to establish educational or vocational programs at the prison where Ballard was housed. Second, the papers Ballard filed in the trial court and with this court do not show he could amend to cure that defect and allege a violation of a ministerial duty. In short, Ballard is another self-represented plaintiff who loses at the pleading stage because he relies on general legal principles in an attempt to establish specific rights or duties (here, ministerial duties) that are not recognized under California law.

We therefore affirm the judgment.

## FACTS

Ballard is an inmate at the California Substance Abuse Treatment Facility (CSATF) at the Corcoran State Prison. In December 2010, Board of Parole Hearings (BPH) representative Joseph Muga completed and signed a BPH form titled "LIFE PRISONER: DOCUMENTATION HEARING (BPH §2269.1)." The form listed Ballard's offenses as violations of Penal Code sections 459 (burglary) and 487, subdivision (d) (grand theft; taking an automobile or firearm) and stated the CDCR received Ballard in April 2002. The second page of the form included a section stating that the panel made evaluation and recommendations at Ballard's initial parole hearing after reviewing with him the facts that might be of concern. Two of the seven topics

2.

addressed in the evaluation and recommendations section of the form were vocational training and academics. The form addressed vocational training by noting that Ballard had not started or completed any such training while in CDCR's custody and recommending that "he complete two or more vocations which will make him marketable in the community." The form addressed academics by noting Ballard's statements that (1) he would soon take a general educational development (GED) test and (2) he was enrolled in community college correspondence courses. It recommended that he pass the GED test and earn an associate's degree from the community college.

The BPH form also noted Ballard's statement that he no longer participates in gang activities, noted a form 812 reflected he was a member of a particular gang, and "recommended no further gang membership/participation." The form stated psychiatric treatment was not needed, noted Ballard currently was on a waiting list for AA/NA groups, and recommended he develop a history of successful job assignments while in CDCR's custody.

Nearly eight years later, in October 2018, Ballard submitted two CDCR form 22's (request for interview, item or service) to officials at CSATF. The request asserted Ballard was being prevented from viewing college videos and related material at the Voluntary Education Program (VEP). Ballard alleged this violated his rights under Proposition 57.

When the matter was not resolved to Ballard's satisfaction, he submitted a formal grievance on a CDCR 602 (Rev. 03/12), Inmate/Parole Appeal (Form 602). The Form 602 referred to "the issue of precluding inmates access to attend V.E.P." and asserted CSATF and its officials had the responsibility "to provide him with the necessary means to be found suitable for parole."

CSATF's first level response to Ballard's Form 602 identified his "issue of not being able to attend the Voluntary Education Program" and stated Ballard had been interviewed. During the interview, Ballard said (1) he had been told by the BPH that he

3.

would be appearing before it in 2019; (2) he had been told to continue both the plumbing classes to which he was currently assigned and VEP college classes; and (3) he was under the impression that he could not be enrolled in the plumbing classes and, at the same time, continue his upper level math classes with Coastline Community College. After describing Ballard's statements, the first level response stated that Ballard had earned an associate's degree through Coastline Community College and that he wanted to continue to work towards earning a certificate in plumbing while completing additional college work—specifically, upper division mathematics through the community college with the assistance of the VEP tutor. The response stated Ballard's grievance was partially granted and that "[y]ou may continue to attend C[areer Technical Education] plumbing classes while, at the same time, you pursue your academic goals though the V.E.P. correspondence college program working independently in your housing unit. You will be allowed time away from your C.T.E. class for midterm and final exams as required by Coastline Community College."

Ballard submitted a second level appeal, contending the least restrictive means had not been provided and that being precluded from viewing the college videos frustrated his ability to achieve what the BPH was requiring–that is, obtaining marketable skills that would make him a nonthreat to public safety.

In January 2019, CSATF's warden issued a second level response denying Ballard's appeal. The response defined the issue presented by stating: "At the Second Level you claim you will not be able to explain to the Board of Prison Terms why you had to quit college because you couldn't watch the videos. You claim the least restrictive method has not been made available as the institution must allow you the use of ETO time so you can view the videos."[1] The response stated Ballard's claim that he would

---

[1]     ETO stands for excused time off. (Cal. Code Regs., tit. 15, § 3045.2, subd. (a).) Inmates assigned to work groups A-1 and B may use ETO during approved absences from their assignment in the manner specified in the CDCR's regulations. (*Ibid.*) The

have to explain to the Board of Prison Terms why he had to quit college was false because his records showed that he had received three associate's degrees from Coastline Community College and a certificate in business and that he also had completed the core and green technology portions of the vocational plumbing program. The response stated that while CDCR "has a responsibility to provide programs for inmates to be found suitable for parole, it is not the Department's responsibility to ensure that every program is available at every institution when the inmate wants to attend." The response also stated that because Ballard had completed the core of the plumbing program, he could request to be unassigned from that program so he could pursue college fulltime, or he could remain in the plumbing program and pursue college in his free time. The response explained: "As college is a voluntary program, ETO time may not be used to attend college classes." The response's decision section stated: "Your claim the institution must allow you the use of ETO time so you can watch college videos is **DENIED**, in that ETO time may not be utilized for attending college classes."

Ballard submitted a third level appeal to the Office of Appeals. In June 2019, the third level response denying the appeal was delivered to Ballard. Thus, Ballard exhausted the administrative remedies available within the CDCR.

## PROCEEDINGS

On September 8, 2019, Ballard delivered a petition for writ of mandate and declaratory relief, with attachments, to prison officials for mailing to the superior court. The superior court filed the writ petition 47 days later. The writ petition named Ralph M. Diaz, the secretary of the CDCR (Secretary), as the only defendant and alleged the

---

authorized uses of ETO listed in subdivision (d) of section 3045.2 of title 15 of the California Code of Regulations do not include attending or working on college courses or other educational programs.

Subsequent references to "Regulations" are to title 15 of the California Code of Regulations.

Secretary was responsible for CDCR's operations, which included complying with the California Constitution, applicable statutes, rules and regulations.[2]

Ballard alleged the Secretary had a clear ministerial duty to comply with the requirements of (1) Proposition 57, which the electorate approved in November 2016 and added section 32 to article I of the California Constitution, and (2) Penal Code sections 3041 and 5058. He also alleged that, despite these duties and responsibilities, the Secretary failed and refused to perform his duty under the law.

The writ petition's prayer for relief requested (1) a judgment declaring the Secretary was in violation of the California Constitution, article I, section 32 and Penal Code section 3041, subdivision (a); (2) an order directing CDCR "to stop limiting rehabilitative measures"; (3) an order halting the infringement of Ballard's pursuit of both vocational and educational programs as required by Penal Code section 3041, subdivision (a)(1); and (4) an order directing CDCR to comply with section 53130.5.1 of its operations manual regarding combination assignments considered as credit qualifying fulltime programs.

In February 2020, the Secretary filed a demurrer stating the petition failed to identify a ministerial duty that the Secretary had refused to perform and the complaint for declaratory relief failed to allege facts sufficient to constitute a cause of action. The hearing on the demurrer was set for April 7, 2020. Ballard filed an opposition. The opposition stated that the Secretary had sole discretion to determine when and how rehabilitative vocational or educational programs are, can, or will be offered at a particular institution. It also stated the Secretary had a ministerial duty to comply with the California Constitution and referred to Proposition 57 and its provisions requiring the Secretary to adopt regulations in further of Proposition 57 and certify the regulations

---

[2]     After Ballard's writ petition was filed, Kathleen Allison became the Secretary of the CDCR.

protect and enhance public safety. Ballard's opposition asserted that if the Secretary could not be clear as to the reason why he failed to perform this particular duty, the writ of mandate should issue. The Secretary did not file a reply.

Before the April 7, 2020 hearing, the trial court issued a tentative ruling stating that (1) a reply had not been filed and (2) the matter would be continued. Ballard did not appear at the April 7, 2020 hearing. The court, with the agreement of defense counsel, continued the hearing to May 5, 2020.

At the May 5, 2020 hearing, Ballard and defense counsel appeared by telephone. The trial court announced its tentative to sustain the demurrer without leave to amend because Proposition 57 did not impose a mandatory duty on the Secretary to adopt particular programs and educational opportunities for each institution and a writ of mandate could not be issued to require the Secretary to exercise his discretion in a particular way. After arguments were heard, Ballard requested a statement of decision and the court agreed to issue one. The court also stated Ballard could appeal after he received the statement of decision.

Later on May 5, 2020, the trial court signed and filed a document titled "STATEMENT OF DECISION RE: RESPONDENT'S DEMURRER TO WRIT OF MANDAMUS." The decision described what occurred at the hearing, stating the court announced its tentative ruling and invited the parties to present argument. The decision stated that the court, after considering the arguments and pleadings, adopted its tentative decision as follows: "The Respondent's Demurrer is sustained without leave to amend. No amendment can cure the fact that there is no mandatory duty the court may enforce."

The clerk's transcript does not contain an order dismissing the writ petition or a judgment of dismissal. Also, the docket or register of actions contained in the clerk's transcript does not contain an entry for such an order or judgment. Consequently, for purposes of this appeal, we deem the trial court's statement of decision to incorporate a judgment of dismissal. (See *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 527, fn. 1;

*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 ["Reviewing courts have discretion to treat statements of decision as appealable when they must, as when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits"].) As a result, we are not required by the applicable principles of appellate procedure to dismiss the appeal for lack of an appealable order or judgment.

Subsequently, Ballard attempted to file a motion for reconsideration, which was lost by the clerk's office, most likely because of staffing and operational issues related to COVID. In September 2020, the court filed an order describing the loss of the motion to reconsider, mentioning other documents filed by Ballard, and setting a hearing in October 2020 to discuss how to proceed. The procedural events that occurred prior to the December 10, 2020 hearing on the motion to reconsider are not described in this opinion because they are not material to the issues that determine the outcome of this appeal.

At the December 2020 hearing, Ballard and defense counsel appeared by telephone. The trial court announced its tentative decision to deny the motion because it failed to set forth new or different facts or law that could not have been served in opposition to the demurrer—the standard contained in Code of Civil Procedure section 1008, subdivision (a). After hearing argument, the court reiterated that Ballard had not set forth any new or different facts or law "and he has still failed to set forth a ministerial duty that [the Secretary] has refused to perform." Ballard restated his objection "to this whole entire proceeding" based on the extra time the Secretary was given to file an opposition, which was contrary to the time allowed by the California Rules of Court. A few days after the hearing, the court signed and filed a written order denying Ballard's motion for reconsideration.

On December 18, 2020, the trial court filed Ballard's handwritten notice of appeal, which stated that he appealed from the May 5, 2020 final decision denying his right to correct the defect in his writ petition.

## DISCUSSION

## I. BURDEN OF ESTABLISHING AN ERROR AND PREJUDICE

### A. Basic Legal Principles

Section 13 of article VI of the California Constitution provides in part: "No judgment shall be set aside … for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." The term "miscarriage of justice" refers to an error that was *prejudicial*. (*In re Quentin H.* (2014) 230 Cal.App.4th 608, 620, fn. 8.) Consistent with this constitutional provision, Code of Civil Procedure section 475 provides in part:

> "No judgment … shall be reversed or affected by reason of any error … unless it shall appear from the record that such error … was *prejudicial*, and also that by reason of such error … the said party complaining or appealing sustained and suffered substantial injury, and that *a different result would have been probable if such error … had not occurred or existed*." (Italics added.)

Under these well-established principles of California's constitutional doctrine of reversible error, a judgment of the lower court is presumed correct and, as a result, the appellant must affirmatively demonstrate prejudicial error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Herrera v. Doctors Medical Center of Modesto* (2021) 67 Cal.App.5th 538, 546.)

Accordingly, a showing of "error alone does not warrant reversal." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.) Ballard must show both an error occurred and the error affected the result. (*Ibid.*) The test for whether an error was prejudicial (i.e., resulted in a miscarriage of justice) is whether " 'it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.' " (*Id*. at p. 823.)

9.

B.    Order Sustaining the Demurrer

In this appeal, the trial court issued a statement of decision sustaining the Secretary's demurrer without leave to amend. Consequently, we describe how the foregoing general principles defining the requirement to show both *error* and *prejudice* apply in the specific context of an order sustaining a demurrer without leave to amend.

There were two parts of the trial court's order. The first part sustained the demurrer. The second part refused to grant Ballard leave to amend.

### 1.    *Sufficiency of Allegations*

To show the order sustaining the demurrer was erroneous, Ballard must demonstrate that the pleading states facts sufficient to state a cause of action under any legal theory. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 870 [complaint alleged facts sufficient to state a claim for a writ of mandate]; *Villery v. Department of Corrections & Rehabilitation* (2016) 246 Cal.App.4th 407, 413, 416 (*Villery*) [inmate alleged sufficient facts to state a claim for a writ of mandate to enforce a ministerial duty].) Whether the facts alleged state a cause of action is a question of law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*); *Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 876.) Because the sufficiency of a pleading's allegation presents a question of law, appellate court conduct a de novo review. (*Bichai*, *supra*, at p. 876.) In other words, we do not defer to the trial court's ruling or its reasoning, but decide the matter anew based on our independent review of the record. (See *Visalia Unified School Dist. v. Superior Court* (2019) 43 Cal.App.5th 563, 568 [de novo review].)

When considering a pleading to determine if it states a cause of action, courts give the pleading a reasonable interpretation, reading it as a whole and its parts in their context. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Courts treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Villery*, *supra*, 246 Cal.App.4th at p. 413.) The pleader's contentions or conclusions of law are not controlling because

10.

appellate courts must independently decide questions of law without deference to the legal conclusions of either the pleader or the trial court. (*Ibid.*) Legal questions arising at the pleading stage of a lawsuit include the interpretation of a statute or the application of a statutory provision to facts assumed to be true for purposes of the demurrer. (*Ibid.*)

### 2. Writs of Ordinary Mandate

Code of Civil Procedure section 1085, subdivision (a) provides that a writ of ordinary mandate "may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station …." Code of Civil Procedure section 1086 provides that a writ of mandate "must be issued upon the verified petition of the party beneficially interested." These statutory provisions have been interpreted as identifying two requirements essential to the issuance of the writ—namely, (1) a clear, present and usually ministerial duty upon the part of the respondent and (2) a clear, present and beneficial right in the petitioner to the performance of that duty. (*People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491.)

In this appeal, Ballard's legal theory for issuance of a writ of mandate is that the Secretary failed to perform a ministerial duty established by Proposition 57 and Penal Code sections 3041 and 5058. In considering whether Ballard adequately alleged a cause of action under this legal theory, we address whether Ballard (1) properly identified a ministerial duty and (2) sufficiently alleged facts showing the ministerial duty had not been performed.

### 3. Ministerial Duty under Proposition 57

Proposition 57 added section 32 to article I of the California Constitution. Subdivision (a)(1) of that section provides: "Any person convicted of a nonviolent felony offense and sentenced to state prison *shall* be eligible for parole consideration after completing the full term for his or her primary offense." (Italics added.) Ballard's

11.

writ petition referred to subdivision (a)(2) of section 32 to article I of the California Constitution, which states: "The Department of Corrections and Rehabilitation *shall* have authority to award credits earned for good behavior and approved rehabilitative or educational achievements." (Italics added.) The writ petition also referred to subdivision (b) of that section, which provides: "The Department of Corrections and Rehabilitation *shall* adopt regulations in furtherance of these provisions, and the Secretary of the Department of Corrections and Rehabilitation *shall* certify that these regulations protect and enhance public safety." (Italics added.)

First, we assume for purposes of this appeal that the phrase stating the CDCR "shall have the authority" creates a ministerial duty to award credit for "approved rehabilitative [and] educational achievements." The constitutional provision does not identify what constitutes an "approved rehabilitative or educational achievement[]" or who (for example, the CDCR, the Secretary, or the Legislature) gives the requisite approval. Furthermore, the writ petition does not allege Ballard attained an approved achievement and thereafter was not awarded the appropriate credits. As a result, Ballard has not adequately alleged the Secretary failed to perform a ministerial duty contained in subdivision (a)(2) of section 32 to article I of the California Constitution by failing to award credits earned by Ballard for rehabilitative or educational achievements.

Second, we consider whether the Secretary or CDCR failed to "adopt regulations in furtherance of the[] provisions" of section 32 to article I of the California Constitution. The California Supreme Court referred to these regulations in *In re Mohammad* (2022) 12 Cal.5th 518, when it described the electorate's approval of Proposition 57, quoted the requirement that the CDCR adopt regulations, and stated:

> "The Department subsequently adopted regulations implementing early parole consideration under article I, section 32. Those regulations exclude from nonviolent offender early parole consideration any inmate who 'is currently serving a term of incarceration for a "violent felony[.]" ' (Cal.

12.

Code Regs., tit. 15, § 3490, subd. (a)(5).)" (*In re Mohammad*, *supra*, at p. 524.)

The CDCR's adoption of the regulations required by Proposition 57 is confirmed by our independent review of the Regulations. Sections 3490 and 3491 of the Regulations address parole consideration for determinately-sentenced nonviolent offenders and sections 3492, 3493, 3495, 3496 and 3497 of the Regulations address parole consideration for indeterminately-sentenced nonviolent offenders. Ballard's writ petition does not recognize the existence of these sections of the Regulations and, as a result, does not allege any facts explaining how the sections failed to fulfill the requirements of Proposition 57. In the absence of such an explanation, we must conclude Ballard has not adequately alleged that the Secretary or the CDCR somehow failed to perform the duty to adopt regulations in accordance with Proposition 57.

### 4. *Ministerial Duty under Penal Code Section 5058*

Penal Code section 5058, subdivision (a)(1) provides that the Secretary "*may* prescribe and amend rules and regulations for the administration of the prisons and for the administration of the parole of persons …. The rules and regulations *shall* be promulgated and filed pursuant to" a specified chapter in the Government Code, unless an exception applies. (Italics added.) Ordinarily, the word "shall" in a statute is interpreted as mandatory and the word "may" is interpreted as permissive. (*People v. Standish* (2006) 38 Cal.4th 858, 869.) Consequently, the phrase "may prescribe and amend rules and regulations" does not impose a ministerial duty (Pen. Code, § 5058, subd. (a)); rather, it is a grant of discretionary authority. The mandatory language addressing the method to be used when promulgating rules and regulations cannot be interpreted as imposing a ministerial duty to enact a particular type of regulation, such as a regulation allowing an inmate to use excused time off to attend or work on college courses or other educational programs.

13.

Furthermore, Ballard's contentions about a violation of Penal Code 5058 and his writ petition's allegations do not acknowledge the existence of the regulations adopted by the CDCR to implement Proposition 57. (See Regulations, §§ 3490–3497.) As a result, the writ petition does not explain how the CDCR's implementation of those regulations violated any requirement in Penal Code section 5058. Thus, we conclude Ballard has not adequately alleged that the Secretary or the CDCR breached a ministerial duty imposed by Penal Code section 5058.

### 5. *Ministerial Duty under Penal Code Section 3041*

Paragraphs (1) and (2) of subdivision (a) of Penal Code section 3041 refer to meetings that the BPH must have with an inmate during the sixth year before the inmate's parole eligibility date and one year before the eligibility date. We have not located, and Ballard has not identified, any text in Penal Code section 3041 that refers to a duty imposed on the CDCR or the Secretary. Consequently, we conclude Ballard has not adequately alleged that the Secretary or the CDCR breached a ministerial duty imposed by Penal Code section 3041.

To summarize, the trial court determined Ballard's writ petition was defective because its allegation did not identify an existing ministerial duty that the Secretary had failed to perform. We agree with this determination.

Therefore, we conclude the trial court properly sustained the demurrer. Consequently, the next question to consider is whether leave to amend should have been granted.

### C. Leave to Amend

#### 1. *Governing Legal Principles*

As described in both Ballard's opening brief and his reply brief, (1) a plaintiff should be granted leave to amend if "there is a reasonable possibility that the defect can be cured by amendment" and (2) the burden of demonstrating a reasonable possibility of

curing the defect is squarely on the plaintiff.  (*Blank*, *supra*, 39 Cal.3d at p. 318.)  Ballard's briefs, however, do not address the more specific principles describing how a plaintiff goes about demonstrating a reasonable probability of curing a defective pleading.

Initially, we note that a plaintiff's showing or demonstration of a reasonable possibility of curing the defects may be made in either the trial court or the appellate court.  (See *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 [plaintiff may meet burden of demonstrating an amendment would cure a pleading's legal defect for the first time on appeal].)  Code of Civil Procedure section 472c, subdivision (a) provides: "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made."  In *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, the Supreme Court interpreted this statute to mean:  "The issue of leave to amend is always open on appeal, even if not raised by the plaintiff."  (*Id*. at p. 746.)  Therefore, even if Ballard's opposition to the demurrer and his subsequent motion for reconsideration did not adequately specify how he could amend the writ petition to state a cause of action, that showing could be made by Ballard for the first time on appeal.

To carry the burden of demonstrating a reasonable probability of curing a defective pleading, a plaintiff must show (1) the manner the defective pleading can be amended and (2) how that amendment will change the legal effect of the pleading.  (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491.)  "The assertion of an abstract right to amend does not satisfy this burden."  (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)  The "plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for the amendment, i.e., the elements of the cause of action and authority for it.  Further, the

plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary. [Citation.]" (*Id*. at pp. 43–44.)

### 2. *Ballard's Showing*

Ballard's opening brief includes a heading asserting that the defect in his petition for writ of mandate could be remedied. Under that heading, Ballard "contends that any defect[s] in the Petition for writ of mandate and declaratory relief were curable." He also asserts:

> "Even if [the Secretary's] demurrer had been sustained, the court would have been required to give the appellant 10 days to cure the defects. [Penal Code] Section 1007 applies to appellant's motion for Reconsideration/Objection. (2CT. 374. 375-382.). Which this honorable court would agree that the defect can be remedied, and that the verdict sustaining the demurrer cannot stand."[3]

Ballard's reply brief states that "he has explained in his Motion for Reconsideration/Objection that the defect can be corrected." Elsewhere in his reply brief, Ballard asserts that the defect could be easily remedied if the court had permitted him. Based on these assertions, we turn to Ballard's motion for reconsideration to determine if it demonstrated how the defect could be remedied.

In the motion, Ballard stated that he "only wants to call the court's attention to the harmless error in this petition which was typed by the inmate assistant in typing the Petition which is similar to a clerical error which if permitted the defect could be remedied." Ordinarily, one would expect an appellant's next two sentences to (1) identify the sentence with the clerical error and (2) set forth the language that would

---

[3] This lawsuit is a civil case, not a criminal case. Consequently, the demurrer and leave to amend are governed by provisions in the Code of Civil Procedure. (Code Civ. Proc., §§ 430.10–430.80 [demurrers], 472c [amendment when demurrer is sustained], 473.) Thus, Ballard is mistaken in his reliance on Penal Code section 1007—it has no application in this case.

replace the clerical error if leave to amend was granted.  (See *Rakestraw v. California Physicians' Service*, *supra*, 81 Cal.App.4th at p. 43.)  However, Ballard's motion did not set forth these matters.

Instead, Ballard's motion set forth his contention that CDCR officials denied him access to the programs required of him by the BPH, which in Ballard's view made it impossible for rehabilitative achievement credit to be verified.  This contention implies that the Secretary or the CDCR have a ministerial duty to make certain programs available to Ballard.  Ballard's argument does not show he could actually plead the existence of a ministerial duty to make to provide access to programs either required by the BPH or recommended by it.  To show he could plead such a duty exists, Ballard would need to clearly and specifically set forth the applicable substantive law creating the duty.  (See *Rakestraw v. California Physicians' Service*, *supra*, 81 Cal.App.4th at p. 43.)  Ballard has failed to do so.  As a result of this failure, Ballard has not carried his burden of demonstrating he could cure the defect in the writ petition if given leave to amend.

## II.    PROCEDURAL ERROR

Ballard also contends the trial court erred by acting in excess of its jurisdiction when it failed to follow its own court rules.  In particular, Ballard asserts the court erred in setting the hearing date for his motion to reconsider and in granting the Secretary time to file an opposition, which grant was 14 times beyond the 15-day statutory requirement.  As explained below, Ballard has not carried his burden of showing prejudice resulting from the alleged procedural error.

Although our independent review of the record did not identify a violation of a particular rule or case law precedent, we will assume for purposes of this appeal that the trial court erred in the manner claimed by Ballard.  Based on this assumption, we proceed to the question of prejudice.  Prejudice is shown when it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.  (*In re*

17.

*Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 823.)  Ballard has the burden of demonstrating the purported procedural error was prejudicial.  (*Id.* at pp. 822–823.)

In this case, to show a more favorable result than dismissal of the writ petition was reasonably probable, Ballard must show that he could amend his pleading and state a cause of action—specifically, that he could adequately allege that the Secretary failed to perform a ministerial duty.  As discussed earlier, Ballard has failed to carry that burden.  Consequently, we conclude that any procedural error in handling his motion to reconsider constitutes harmless error and could not be the basis for a reversal.  In other words, reversing the denial of the motion for reconsideration and directing the trial court to consider the substance of the motion without considering the Secretary's opposition would lead to the same conclusion—Ballard's writ petition must be dismissed because it does not adequately allege the Secretary failed to perform a ministerial duty and Ballard has not shown he could amend the petition to allege such a failure.

## DISPOSITION

The order sustaining the demurrer without leave to amend is affirmed. Respondent shall recover costs on appeal.